UNGLES–HOGGETTE MFG. CO. v. FARMERS' HOG & CATTLE POWDER CO.

(Circuit Court of Appeals, Eighth Circuit. March 20, 1916.)

No. 4453.

1. TRADE-MARKS AND TRADE-NAMES ☞3(4)—DESCRIPTIVE MARKS—"DIP"—"DRY-DIP."

The compound word "dry-dip" cannot be appropriated as a trade-mark for a powder to be sprinkled over animals to rid them of vermin, since "dip" as a noun has a well-established meaning as a liquid preparation into which objects may be dipped or immersed, as for cleansing, coloring, and, the like, and in connection with animal husbandry means a liquid preparation into which infected animals may be plunged for treatment, and a "dry-dip," therefore, presumptively means a dry or powdered preparation intended to perform the same service.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 7; Dec. Dig. ☞3(4).

For other definitions, see Words and Phrases, First and Second Series, Dip.]

2. TRADE-MARKS AND TRADE-NAMES ☞8—DESCRIPTIVE MARKS—ARBITRARY SPELLING.

Nor can there be an appropriation of the word "dridip" as a trade-mark for such a powder, since that is idem sonans with the other spelling, and Act March 3, 1881, c. 138, § 2, 21 Stat. 503, providing for the registration of trade-marks, requires as a condition to registration a showing that no other person has the right to use the mark sought to be registered, either in the identical form or in any such near resemblance thereto as might be calculated to deceive, thereby indicating the disapprobation of Congress to the use of any word as a trade-mark tending to deceive or confuse the public.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 12; Dec. Dig. ☞8.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. TRADE-MARKS AND TRADE-NAMES ⚙═➡45—REGISTRATION—EFFECT.

The registration of a trade-mark under Act March 3, 1881, c. 138, § 7, 21 Stat. 503, is only prima facie evidence of ownership, and confers no right to the use as a trade-mark of a descriptive name, which could not be appropriated as such at common law.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 53, 59; Dec. Dig. ⚙═➡45.]

Appeal from the District Court of the United States for the District of Nebraska; Thomas C. Munger, Judge.

Suit for injunction by the Ungles-Hoggette Manufacturing Company against the Farmers' Hog & Cattle Powder Company. Decree for the defendant, and plaintiff appeals. Affirmed.

Maxwell V. Beghtol, of Lincoln, Neb. (Edmund C. Strode, of Lincoln, Neb., on the brief), for appellant.

Samuel P. Davidson, of Tecumseh, Neb., for appellee.

Before ADAMS and CARLAND, Circuit Judges, and TRIEBER, District Judge.

ADAMS, Circuit Judge. This was a bill to restrain infringement of a trade-mark consisting of the word "Dridip," which the plaintiff, Ungles-Hoggette Manufacturing Company, claims to have adopted and appropriated as a trade-mark, to indicate the origin and ownership of a certain lice and vermin destroyer manufactured by it. It alleged in its bill that the defendant, Farmers' Hog & Cattle Powder Company, infringed upon its trade-mark by using the words "Dry-Dip," or "Farmers' Dry-Dip," on packages of lice and vermin destroyer manufactured by it.

Defendant denied that plaintiff had appropriated, or by use or otherwise had acquired, the right to the exclusive use of the word "Dridip" as a trade-mark for its product, on the ground that that word, instead of indicating the origin and ownership of its product as it lawfully might, was descriptive of that product, and was not the subject of exclusive appropriation by plaintiff as a trade-mark. Defendant also denied infringement.

The District Court heard the proof and rendered a decree dismissing the bill. Plaintiff appeals.

[1] The word "dip," as a noun, has a well-understood meaning. Any liquid preparation into which objects may be dipped or immersed, as for cleansing, coloring, lacquering, and the like, may be properly described as a dip. See "dip" in Webster's International Dictionary and Funk & Wagnalls Dictionary. Such common use of the word "dip," as a noun, is conceded by plaintiff's counsel. In connection with animal husbandry this word, taken by itself, therefore, signifies some liquid preparation, consisting of a mixture of parasiticides, like sulphur, coal-tar creosote, arsenic, or similar agents, into which animals infected with lice and other vermin may be plunged for treatment.

The word "Dry-Dip," employed in connection with animal husbandry, would presumptively mean some dry or powdered preparation

intended to perform the same service. This proposition, however, is not left to presumption or speculation, as counsel specifically agreed (among other facts bearing on the case, which, in view of the conclusion reached by us, it is unnecessary to state), that "the dry dip sold by the defendant and the dridip sold by plaintiff is a dry powder, and is used by sprinkling on the animal." So it appears that the dry-dip served the same purpose and accomplished the same result as the liquid dip, with an unimportant difference—in their application. The infected animal is driven or plunged into the liquid dip, while the dry dip is sprinkled upon the infected animal. In view of these considerations, plaintiff certainly could not have appropriated the compound word "Dry-Dip" as its trade-mark. Such a word would unquestionably have been accurately descriptive of the article sold or dealt in by it.

[2] Does the fact that plaintiff misspelled the first member of its compound word, in such a way, however, that its necessary pronunciation is the same as "Dry-Dip," make the misspelled word any more available to exclusive appropriation by it? We think not. In Trinidad Asphalt Manufacturing Co. v. Standard Paint Co., 163 Fed. 977, 90 C. C. A. 195, affirmed by the Supreme Court in 220 U. S. 446, 31 Sup. Ct. 456, 55 L. Ed. 536, we had occasion to consider whether the plaintiff could secure a trade-mark in the word "Ruberoid," notwithstanding the conceded right of the public to make use of the word "rubberoid," and we there said:

"A public right in 'rubberoid' and a private monopoly of 'ruberoid' cannot coexist. They are inconsistent and trespass upon each other, and under the law of trade-mark the latter must give way. To the contention that 'ruberoid' is fanciful or arbitrary, it must be said that no one can restrict or destroy the public right by the coinage and monopoly of a word that is a near imitation of one, the use of which is open to all for the truthful description of articles of trade and commerce."

To these propositions many illustrative cases are cited to which attention is directed. In addition to the teaching of that case, which seems to us conclusive of this, attention may be called to the fact that Act March 3, 1881, c. 138, 21 Stat. 502, entitled "An act to authorize the registration of trade-marks and protect the same," requires as a condition to such registration that the applicant must make a showing that:

"No other person, firm, or corporation has the right to use the mark sought to be registered, either in the identical form *or in any such near resemblance thereto as might be calculated to deceive.*" Section 2.

While this act relates to registration only of a trade-mark, it nevertheless discloses the disapprobation of Congress to the use of any word as a trade-mark which may tend to confuse or deceive the public. The word "Dridip" may be a misspelling of the word "Dry-Dip." This, however, depends upon whether the phonetic method of spelling is practiced or not (many educated and more uneducated persons do practice it). But, however this may be, there can be no possible difference in the pronunciation of the two words. They sound alike to any listener or bystander.

The rule governing the doctrine of idem sonans is that absolute accuracy in spelling words is not required in legal documents or proceedings, whether civil or criminal. If the name, as spelled in a document, however incorrectly, conveys to the ear, when pronounced according to the commonly accepted methods, a sound practically identical with the name as correctly spelled, the name thus given is a sufficient designation of the individual referred to, and no advantage can be taken of the clerical error. See Hubner v. Reickhoff, 103 Iowa, 368, 72 N. W. 540. 64 Am. St. Rep. 191; Robson v. Thomas, 55 Mo. 581. Manifestly then, the word "Dridip" could no more be appropriated as a trade-mark than the concededly descriptive word "Dry-Dip."

[3] Some argument is made that the fact of registration of the word "Dridip" as a trade-mark conferred upon the plaintiff some additional right. This is not correct. If there be no valid common-law trade-mark by the appropriation and use of a word or symbol that indicates origin or ownership, as distinguished from describing the article manufactured or sold, the bare fact of registration cannot make it so. Registration is only prima facie evidence of ownership. See Act March 3, 1881, c. 138, § 7, 21 Stat. 502. If that presumption is overcome by the facts in a given case, then registration is of no avail.

Our conclusion is that the word "Dridip" is so descriptive of the article manufactured and sold by plaintiff that it cannot be the subject of a lawful trade-mark. With this conclusion, no consideration need be given to the defense of a noninfringement.

Judgment of the District Court is affirmed.