JELL–WELL DESSERT CO. v. JELL–X–CELL CO.

(District Court, S. D. California, S. D. January 14, 1927.)

Trade-marks and trade-names and unfair competition ☞43—Trade-mark "Jell-Well," for gelatine, held invalid, as descriptive (Comp. St. § 9490).

Trade-mark "Jell-Well," adopted by manufacturer of gelatine, held invalid, as being so plainly descriptive of natural and necessary quality of product as to make it incapable of registration under Act Feb. 20, 1905 (Comp. St. § 9490).

In Equity. Suit by the Jell-Well Dessert Company against the Jell-X-Cell Company. Decree for defendant.

Raymond Ives Blakeslee, of Los Angeles, Cal., for plaintiff.

Hill, Morgan & Bledsoe, of Los Angeles, Cal., for defendant.

JAMES, District Judge. Action in equity for an injunction and for damages. Plaintiff, being the manufacturer of a class of merchandise, the base of which for a great many years has been included under the name of "gelatine," adopted as a trade-mark for the product the words "Jell-Well." This description was allowed registration by the Patent Office on May 29, 1923. The defendant, manufacturing a like commodity, later adopted the trade-mark "Jell-X-Cell." This mark was also registered in the Patent Office. The suit here concerns alleged infringement of the plaintiff's trademark. Plaintiff charges that the defendant's mark in its design and character was calculated to deceive the public, and to induce the belief among purchasers that in buying Jell-X-Cell they were in fact securing the product of the plaintiff. Similarity of package and marking are also included in the charge as alleged in the bill of complaint, to show willful intent to infringe and aggravation of the imitative practice.

The defendant in its answer, while denying infringement, raised the important issue that the trade-mark of plaintiff was invalid, in that it was composed of words and characters not permitted to be appropriated to the sole use of any manufacturer of such a product as that concerned in the controversy. Specifically the last objection was based upon those terms of the trade-mark statute which forbid registration of words or devices "which are descriptive of the goods with which they are used, or of the character or quality of such goods." Act Feb. 20, 1905, 33 St. L. 725 (Comp. St. § 9490).

After the issues were made up, the cause was referred to a special master, to take the testimony and report his findings and recommendation for judgment. Under the order of reference the report is advisory. The report was returned, the master finding all of the issues in favor of the plaintiff, and advising a decree to be entered as prayed for in the bill of complaint. Exceptions were presented by defendant, which challenged all of the findings.

The master reached the conclusion that the words "Jell-Well" were to some extent fictitious and not descriptive, and hence concluded that the charge of invalidity was not sustained. Notwithstanding the great respect that I have for the learning and seasoned judgment of the master who heard the testimony in this case, I cannot find room under the facts which the record here exhibits to distinguish, either in kind, character, or import, the word combination as used by the plaintiff and the very great many similar marks which have by the courts been held to be invalid. Judge Learned Hand, in Franklin Knitting Mills, Inc. v. Fashionit Sweater

Mills, Inc. (D. C.) 297 F. 247, has collected a number of the cases and the briefs of counsel present others. It is unnecessary here to repeat the citations.

If this trade-mark be valid, let us see what the result is in the effect of such a holding upon manufacturers of gelatine products. One of the prime objects and indispensable qualities of the substance is that, when it is changed by manipulation and addition of water into a form available for use as an edible substance, it must "jell." If it does not jell, then it is not a satisfactory product. Now, with the trade-mark "Jell-Well," in its use the exclusive possession of the Jell-Well manufacturers, no other producer of the product may label his goods or advertise their indispensable quality, by giving unusual prominence on the package or advertisement to the statement that the product "jells well." To my mind the words are so plainly descriptive of a natural and necessary quality of the concoction as to relieve the question of any doubt whatsoever.

That the plaintiff plainly has relied upon the words of the trade-mark as descriptive of the quality of his merchandise, the record shows beyond dispute. In its advertisements it made prominent the fact that "Jell-Well" would jell well. That the defendant likewise by its mark "Jell-X-Cell" intended to describe the quality of its product, and perhaps to indicate it would jell better than other products, seems fairly certain; also that it intended to colorably imitate the trade designation of the plaintiff. But, admitting that there was such purpose of imitation, plaintiff is not entitled to prevail here, where the mark selected by it was not one for which protection could be claimed under the Trade-Mark Act. In the plain words of the statute marking out the limitation, and the adjudicated cases giving numerous illustrations, Judge Hand's remark, as it appears in the opinion in the Fashionit Case is apropos. Judge Hand said:

"With the whole field of possible coinage before them, it is strange that merchants insist upon adopting marks that are so nearly descriptive. Probably they wish to interject into the name of their goods some intimation of excellence, and are willing to incur the risk."

The "Textul," "Slo Flo," and "Dridip," considered respectively in Swan & Finch Co., 49 App. D. C. 94, 95, 259 F. 990–991, and Ungles-Hoggette Mfg. Co. v. Farmers' Hog & Cattle Co. (C. C. A.) 232 F. 116, are characteristic instances where trade-marks were held invalid because of the descriptive meaning of the words employed, as associated with the product. Those words were even more nearly fictitious than is the double word adopted by the plaintiff.

That the defense of estoppel was not established, I think, is true, as the master found.

The exceptions to the master's report except as indicated, are sustained. Decree will be for the defendant, with costs. These costs are not to include the amount paid by defendant as a condition to being allowed to amend its answer and allege the defense of estoppel.

All legal exceptions are allowed the respective parties to the making of this order, and to the entry of the decree which will follow.