NORTHWESTERN CONSOL. MILLING CO. v. MAUSER & CRESSMAN.

(Circuit Court, E. D. Pennsylvania. July 31, 1908.)

No. 63, April Sessions, 1908.

TRADE-MARKS AND TRADE-NAMES—INFRINGEMENT—"CERESOTA" AS NAME OF FLOUR.

The word "Ceresota," as the name of a brand of flour, is not descriptive in such sense that it may not be adopted as a valid trade-mark, and such trade-mark is clearly infringed by the use of the name "Cressota" by a different manufacturer.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trade-Marks and Trade-Names, § 71.]

In Equity. On motion for preliminary injunction.

Charles Howson and A. C. Paul, for the motion.
Charles N. Butler, opposed.

ARCHBALD, District Judge.[1] The demurrer to the bill has been disposed of by the amendments, leaving nothing in the way of a consideration of the present motion on its merits.

The complainants are engaged in the manufacture of flour, at Minneapolis, Minn., and have adopted and duly registered as a trademark the word "Ceresota" for a brand of flour which they put out, by which, by judicious advertising, at large expense, it has come to be extensively and favorably known. The defendants are also in the flour business, at Catasaqua, Pa., and make use of the word "Cressota" on a brand of their flour, thereby infringing, as it is claimed, on the complainants' rights. That "Cressota" is an infringement of "Ceresota" needs no argument. Indeed, the resemblance is so close as to suggest that it is deliberate. Intentional infringement, however, is denied; it being explained that "Cressota" is derived from the name of Mr. Cressman, one of the defendants, who is familiarly known to his friends as "Cress," and the suffix "ota" being a common one in flour trade-marks, taken from, if not indicative of, the great wheat-producing states of the Northwest. But, even if this be accepted as something more than a specious explanation, it does not do away with the fact of infringement, which is clearly made out, and from which the defendants must therefore desist.

It is said, however, that "Ceresota" is a descriptive term, and (except as brought within the recent act of Congress) not capable, therefore, of being adopted as a trade-mark, being derived from "Ceres," the goddess of grain, from which we get the common word "cereal," with "ota" added, the ending, as already noted, of the names of the great grain states of Minnesota and the two Dakotas, with which, as it is said, it has come to be identified. "Ceresota," according to this, would thus be understood to mean, without more, a flour produced from grain grown in that section of the country. But this is altogether strained and fanciful. The first part of the word, no doubt, is derived, somwhat happily, as applied to flour, from the name of the goddess. But that there is any such meaning as is claimed for the termination "ota," or that it is capable of being made out of it, is not to be credited. It is possible that under the lead of the complainants, through the use of the very word here in controversy, this ending may have come to be adopted by others in the flour business as a part of their trade-marks. But that affords no proof of any such inherent or acquired sense as is contended for, so as to make it descriptive, either by itself or in combination. "Ceresota" is plainly a made-up word, and, having been coined and adopted by the complainants as a trade-mark in their business, they are entitled to the exclusive use of it, without being interfered with by others imitating it.

Let a preliminary injunction issue as prayed for.

[1] Specially assigned.