## Berkley Company v. Berks, etc.

*Leon I. Mesirov,* for plaintiff.
*Harry C. Liebman,* for defendant.

MILNER, J., November 16, 1945.—Plaintiff, the Berkley Company, filed a bill in equity in this case for an injunction restraining defendant, Herbert L. Berks, individually and trading as Berkey Company, from using or advertising the name "Berkey" or any other word deceptively similar to "Berkley" as trade-names or trade-marks in connection with neckties, scarfs or cravats, and for an accounting for all profits derived by him from the use of the word "Berkey" as a trade-name or trade-mark in connection with neckties, scarfs and cravats. Defendant has filed an answer and a final

hearing was had on September 27, 1945. From the pleadings and the evidence we make the following

*Findings of fact*

1. Plaintiff is a corporation incorporated under the laws of the State of Delaware, having its principal place of business at 1219 Vine Street, Philadelphia, Pa., and has a valid and subsisting certificate of authority to transact business within the Commonwealth of Pennsylvania.

2. Defendant is an individual residing at 5649 Litchfield Street, Philadelphia, Pa., and is engaged in the business of manufacturing neckwear and dungarees under the fictitious trade name of "Berkey Co." at 725 Arch Street, Philadelphia, Pa. The said fictitious tradename was registered in the Office of the Secretary of the Commonwealth and Prothonotary of the Courts of Common Pleas of Philadelphia, under the provisions of the Act of June 28, 1917, as amended in May 1944.

3. Since 1918 plaintiff and its predecessor organizations have used the word "Berkley" as a trade-mark and trade name, in connection with its business of manufacturing and marketing ties, scarfs and cravats.

4. Plaintiff registered the word "Berkley" as a trade-mark and trade name for use in connection with ties, scarfs and cravats, as evidenced by a certificate of registration issued by the Secretary of the Commonwealth of Pennsylvania, on July 8, 1940, recorded in vol. 20, page 366, pursuant to the provisions of the Act of June 20, 1901, P. L. 582, as amended.

5. Plaintiff has expended large sums of money in advertising the said trade-mark and trade name "Berkley", and the same is valuable and well known in the field of ties, scarfs and cravats.

6. Plaintiff has advertised its product extensively for many years in newspapers, magazines and trade journals.

7. In 1944 defendant adopted the word "Berkey" as a trade-mark and trade name and is using that word in and about his business of manufacturing and selling ties.

8. The said use by defendant of the trade-mark and trade name "Berkey" consists, inter alia, in selling, offering for sale and disposing of ties to which the said trade-mark and trade name are affixed.

9. The said use by defendant of the trade-mark and trade name "Berkey" consists, inter alia, in selling, offering for sale and disposing of ties in boxes and cases to which the said trade-mark and trade name are affixed.

10. The said use by defendant of the trade-mark and trade name "Berkey" consists, inter alia, in uttering and displaying the same in the conduct of his business on letterheads, advertisements and in various other ways.

11. The use by defendant of the trade-mark and trade name "Berkey" was and is without the consent of the plaintiff.

12. The word "Berkey" is so deceptively similar to the word "Berkley" as to be calculated or likely to deceive average persons dealing with or purchasing articles of neckwear manufactured by plaintiff.

13. The adoption and use of the trade-mark and trade name "Berkey" for ties by defendant occurred at a time when defendant knew of the similarity between the said trade-mark and trade name and the plaintiff's trade-mark and trade name "Berkley".

14. Defendant continued to use the trade-mark and trade name "Berkey" after he learned of the deceptive similarity between the same and the plaintiff's trade-mark and trade name "Berkley" and of plaintiff's registration thereof.

15. Defendant refused to cease and desist from the use of the trade-mark and trade name "Berkey" in

connection with ties, scarfs and cravats after plaintiff demanded that he do so.

16. Plaintiff usually attaches a label to its neckwear upon which is depicted a representation of a globe of the world with a tie superimposed upon it and the phrase "Berkley Ties the World", but in some instances merely places the trade name "Berkley" on its neckwear.

17. Defendant does not advertise his product, except that defendant attaches to his dollar neckwear a label which is dissimilar to the label used by the plaintiff, but does contain the trade name "Berkey".

18. Defendant sells his neckwear to jobbers, whereas plaintiff sells directly to the retail trade.

## Discussion

Plaintiff, the Berkley Company, has been using the trade name and trade-mark "Berkley" in connection with its business of manufacturing and selling neckties, scarfs and cravats since 1918, and has used it ever since that time. The Berkley Company was incorporated in 1918 and at the time of its incorporation it also adopted a label which is a representation of a globe of the world on which a tie is superimposed together with the phrase "Berkley Ties the World", which it generally, but not always, affixes to the neckwear manufactured by it. Plaintiff has advertised its trademark "Berkley" for neckwear extensively in magazines, newspapers, trade journals, etc., in the United States and in other countries. Over a period of the past 20 years it has expended approximately $500,000 in advertising its products as "Berkley" ties. It has sent circulars in quantities of a million or more, to about 30,000 retail merchants over a long period of years for the purpose of acquainting them with the current patterns of the "Berkley" ties. From the exhibits offered in evidence it is apparent that the trade name "Berkley" is emphasized and that the label above referred to

is often omitted. Prior to and after it registered its trade-mark and trade name "Berkley" the plaintiff used that name to designate the neckwear manufactured and sold by it and affixed the said name to its neckwear, and prominently displayed the name on its letterheads, invoices, advertisements, containing boxes, circulars, etc. On July 8, 1940, plaintiff registered the word "Berkley" as its trade-mark for "ties, scarfs and cravats", with the Secretary of the Commonwealth of Pennsylvania under the provisions of the Act of June 20, 1901, P. L. 582, as amended.

The above-mentioned act, as amended, provides, inter alia:

"That whenever a person or persons, copartnership or corporations . . . shall hereafter adopt and file for registry, any . . . trade-mark, trade name, . . . it shall be unlawful and a violation of this act for any other person . . . to make any use, sale, offer for sale, or display of the genuine . . . trade-mark, trade name, . . . or any such likeness or imitation thereof as shall be calculated or liable to deceive, of any such person or persons, copartnership or corporations, filing the same; . . ."

The act further provides it is unlawful and a violation of the act for a person to use the registered trade-mark or trade name "or any other such likeness or imitation thereof, in and about the sale of goods, or otherwise, without first obtaining, . . . consent" of the registered owner of the trade-mark or trade name. It also makes it unlawful and a violation of the act for a person to use the registered trade-mark or trade name or "any such likeness or imitation thereof" on invoices, letterheads, bills, or advertisements without the express consent of the registered owner of the trade-mark or trade name. Section 4 of the act provides that upon proof of the violation of the act any court having jurisdiction of the action "shall grant an injunction restraining the defendant from such unlawful acts" and

"shall require the defendant to pay to the plaintiff the profits derived from such unlawful acts" and "shall require the defendant to pay to the plaintiff the profits derived from such unlawful acts".

Defendant admits in his answer that he filed a certificate in the Office of the Secretary of the Commonwealth on May 9, 1944, and a certificate in the Office of the Prothonotary of the Courts of Common Pleas of Philadelphia County on May 15, 1944, evidencing the fact he had assumed the fictitious name of "Berkey Co." and was carrying on his business under that name. It will be noted that this registration is under the Fictitious Names Act of June 28, 1917, P. L. 645, as amended, and not under the act relating to the registration of trade names, trade-marks and labels. He testified that he first began to make neckwear which he sold under the name of "Berkey" in February 1945, and has continuously since that time sold dollar neckties under the trade name of "Berkey" with that name on a label affixed to each tie. He also manufactures and sells neckties which sell for less than one dollar each. The neckwear he manufactures to sell for less than one dollar per tie defendant bills under the name of Berkey Company, but he attaches no identifying label to these ties. Defendant has been in business since June 1, 1944, and his main business is making dungarees and men's underwear. He began making and selling neckwear about February 1, 1945. He testified that the manufacture of neckwear by him amounts to only about four percent of his business and that his total sales of neckwear from the time he started to the date of the hearing was $3,901.50. He testified further that he does not advertise in the newspapers or trade journals; that he sells his neckwear only to jobbers; that in addition to using the name "Berkey" on labels attached to his better grade of neckwear, he uses it on his letterheads, and is listed in the Philadelphia telephone directory as follows: "Berkey Co neckwr 725 Arch Market 2062."

He also inserted a block advertisement in the classified section of the telephone directory. At the time he adopted the name "Berkey" defendant knew that the Berkley Company has been making fine neckwear under the "Berkley" name for many years. Shortly after defendant had bought out a neckwear manufacturing business known as Ritz Neckwear Co. in February 1945 he told a Mr. Walter C. Boss who was a salesman for tie material that he intended to use the name "Berkey" and Mr. Boss testified: "I says 'it may give you some trouble as to adopting a name that is so similar to the Berkley Company.' " It is clearly evident that with the knowledge that plaintiff had been selling a fine grade of neckwear for many years under the trade-mark or trade name of "Berkley" and had established a valuable good will in the neckwear trade defendant deliberately chose a trade-mark or trade name deceptively similar to that of plaintiff. He never obtained the consent of plaintiff to use the name he adopted. Plaintiff discovered that defendant was using a trade-mark or trade name similar to the one he used early in January or February 1945, when Mr. Wollman, president of plaintiff company, happened to see defendant's advertisement in the telephone directory. On February 12, 1945, plaintiff caused its attorneys to write a letter to defendant requesting that he cease using the name "Berkey Co." or any other name deceptively similar to "The Berkley Company". This he refused or failed to do.

We are of the opinion and find as a fact that the trade-mark or trade name "Berkey" adopted by defendant is deceptively similar to the trade-mark or trade name "Berkley" used by plaintiff, when used in connection with the manufacture and sale of neckties, cravats and scarfs, and likely to deceive the average person in believing that the neckwear of defendant is that of plaintiff. We believe that the similarity of the two words is patent. In Lambert Pharmacal Co. v.

Bolton Chemical Corp., 219 Fed. 325, "Listogen" was held to be deceptively similar to "Listerine" and relief was granted even though Lister was the name of a famous physician and surgeon and potentially publici juris. In Northwestern Consolidated Milling Co. v. Mauser & Cressman, 162 Fed. 1004, "Cressota" was held to be an infringement of "Ceresota". The court there stated (p. 1005) :

"That 'Cressota' is an infringement of 'Ceresota' needs no argument. Indeed, the resemblance is so close as to suggest that it is deliberate."

In Wamsutta Mills v. Allen et al., 6 W. N. C. 189, "Wamyesta" was held an infringement of "Wamsutta" even though the former was used only in connection with the sale of shirts which were stated to have been made of "Wamyesta" cloth and the latter was a name used only for cloth. In Schock Independent Oil Co. v. Sinclair Refining Co., 24 F. (2d) 286, "Sico" was held to infringe upon "Sinco". In National Food Products Corp., Inc., v. Jell-O Co., Inc., 19 F. (2d) 797, "Mel-O" was held an infringement of "Jell-O", the court stating (p. 797) :

". . . in our opinion the words 'Jell-O' and 'Mel-O' are so obviously similar both in sound and appearance that the use of both as trade-marks upon goods of the same descriptive properties would manifestly be likely to mislead the purchasing public, and produce confusion in the trade."

We are also of the opinion that the adoption of a trade-mark or trade name by defendant was not made accidentally or innocently but was made with the intention of palming off his product as that of plaintiff, or at least to profit by the good will which has been established by plaintiff for its products under its trade name of "Berkley". Defendant testified that he took the name "Berkey" as the fictitious name under which he trades because the people for whom he did business addressed him in a familiar fashion as "Berkey". But

Mr. Boss, who sold him piece goods and knew him for six or seven years testified he knew him as "Berks".

In R. H. Macy & Co., Inc., v. Macy's Drug Store, Inc., et al., 84 F.(2d) 387, the Third Circuit Court of Appeals enjoined Bernett & Rosenfeld, who registered their drug store in Philadelphia as "Macy's Drug Store" under the Fictitious Names Act, from using the name "Macy". The court said that the use of the word "Macy" "was intended to, and had a tendency to, mislead and deceive the public into the belief that the defendant's business was connected with that of the plaintiff . . . there was a palpable attempt to make use of the plaintiff's reputation and good will, acquired through many years of advertising, and appropriate it to the benefit of the defendants and deceive the public". In The North Cheshire and Manchester Brewery Co., Ltd., v. The Manchester Brewery Co., Ltd., Law Reps. App. Cases (1899) 83, the House of Lords affirmed the decision of the Court of Appeal, enjoining defendant from taking even as a second or subordinate part of its corporate title, the name of an older corporation. Halsbury, Lord Chancellor, said (p. 84):

". . . the real question is, it is in a single sentence. *Is this name so nearly resembling the name of another firm as to be likely to deceive?*" (Italics supplied.)

In American Waltham Watch Co. v. U. S. Watch Co., 173 Mass. 85, 53 N. E. 141, Mr. Justice Holmes, speaking for the Supreme Judicial Court of Massachusetts, enjoined defendant from using the name "Waltham Watch" and said (pp. 85, 87):

"The plaintiff was the first manufacturer of watches in Waltham, and had acquired a great reputation before the defendant began to do business . . . the name of a person may become so associated with his goods that one of the same name coming into the business later will not be allowed to use even his own name without distinguishing his wares": Brinsmead v. Brinsmead, 13 Times L. R. 3.

In an article on "Pre-emption in connection with Unfair Trade", in 19 Columbia Law Review 29, Lord Justice Gifford is quoted as saying:

" '. . . it is a fraud on a person who has established a trade, and carries it on under a given name, that some other person should assume the same name, or the same name with *a slight* alteration in such a way as to induce persons to deal with him in the belief that they are dealing with the person who has given a reputation to the name.' " See Lee v. Haley (1870), L. R. 5 Ch. 154, 160. (Italics supplied.)

See also Justice Maxey's (now Chief Justice) comments on the above four authorities in his dissenting opinion in Quaker State Oil Ref. Co. v. Steinberg et al., 325 Pa. 273, p. 386, et seq.

Defendant contends that plaintiff is not entitled to an injunction because the evidence does not disclose that any person was actually deceived into buying ties from him upon any oral or written representation by him or his employes, that they were the ties made by plaintiff, or that any person was actually deceived by his use of the name "Berkey" as applied to ties. Our courts have held that if the effect is to mislead, a fraudulent intent is inferred, and proof of actual deception is not necessary to the granting of relief: Chas. H. Elliott Co. v. Skillkrafters, Inc., et al., 271 Pa. 185. Even when the resemblance between trade names is accidental and not intentional plaintiff is entitled to protection against the injurious effects on his trade: Dreydoppel v. Young et al., 14 Phila. 226.

As a matter of fact plaintiff adduced evidence that persons had been misled by defendant's use of the trade name "Berkey". A Mr. Seiter, a buyer of men's apparel for Montgomery's, Inc., wanted to call on plaintiff and looked in the telephone book and saw "Berkey Co., neckwear", made a note of defendant's address and went to the designated address. Not finding the man he usually dealt with at the address given, he

asked if it was the Berkley Company and was told it was not. Packages, bills and letters intended for one of the parties hereto were delivered to the other. Defendant, wishing to insert an advertisement in the Philadelphia Inquirer, gave the name "Berkey" but the newspaper ran the advertisement with Berkley Company's name and Berkey Company's address. There is no doubt that the public was likely to be deceived by defendant's use of the name "Berkey" and it certainly led to unnecessary confusion.

The fact that no one was deceived to the extent that he bought the goods of defendant believing them to be the goods of the plaintiff does not deprive the plaintiff of his right to restrain defendant. In The Jos. Dixon Crucible Co. v. Meyer Guggenheim et al., 7 Phila. 408, the court said (p. 410):

"It is not necessary that anyone shall have been deceived. The Court will examine the two things to see if they are not calculated to mislead, and will presume the resemblance to be not accidental, but that it was intentional, and for the purpose of deception: Eddleson v. Vick, 23 Eng. Law and Eq. 53."

In J. Elliott Shaw v. Pilling et al., 175 Pa. 78, the court said (p. 87):

"It is not necessary that the public should be actually deceived in order to afford a right of action. All that is required is that the infringement should have a tendency to deceive. The gist of the action is the intent to get an unfair benefit from another's trade. Actual deception of the public is only material to the question of damages."

Nor does the fact that defendant sold only to jobbers and that none of them were deceived preclude plaintiff from relief in equity. In Schmick v. West Reading Broom Works et al., 79 Pa. Superior Ct. 331, the Superior Court held (p. 338):

"Though a manufacturer does not himself deceive the dealers, he will be enjoined if he knowingly puts it in the power of dealers to deceive the public . . ."

The clear and fair inference that is obtained from all the testimony is that defendant with full knowledge of plaintiff's use of the trade name "Berkley" and the good will in the trade which was attached to it, deliberately and intentionally adopted the trade name, viz, "Berkey" which so nearly resembled the name used by the plaintiff as to be likely to deceive an average person, and that he did so in an endeavor to palm off his product as that of plaintiff or at least to receive the benefit of the good will and market established by plaintiff. We therefore are of the opinion that plaintiff is entitled to injunctive relief.

Inasmuch as the profits made by defendant were of a small amount, and there was no proof that the buyers of defendant's ties bearing "Berkey" name were actually deceived as to the origin of the goods, we are of the opinion that plaintiff is not entitled to an accounting at this time.

### Conclusions of law

1. Having complied with the provisions of the Act of June 20, 1901, P. L. 582, as amended, with respect to the registration of the word "Berkley" as a trademark and trade name for ties, scarfs and cravats, plaintiff is entitled to the remedies afforded by section 4 of said act and general equitable relief.

2. The use by defendant of the word "Berkey" as a trade-mark and trade name in connection with the manufacture and marketing of ties, scarfs and cravats is a violation of section 3 of said Act of June 20, 1901, P. L. 582, as amended, and the rights of plaintiff thereunder, and constitutes an infringement of plaintiff's trade name and trade-mark and unfair competition.

3. Plaintiff is entitled to the injunctive relief prayed for in its bill of complaint.

4. Defendant must pay the costs of these proceedings.

*Decree nisi*

And now, to wit, November 16, 1945, the above-entitled case having come on for hearing, upon consideration thereof it is ordered, adjudged and decreed as follows:

1. That defendant, Herbert L. Berks, individually and trading as "Berkey Co.", is perpetually restrained and enjoined from hereafter

(*a*) Making any use of the words "Berkey", "Berkley" or any other word or arrangement of words deceptively similar to "Berkley" as a trade-mark, trade name, designation or form of advertisement in connection with ties, scarfs, cravats or similar neckwear.

(*b*) Selling, offering to sell, or disposing of any ties, scarfs, cravats or similar neckwear, in bulk, or in box, case, or package to which any trade-mark, trade name, designation or form of advertisement containing the words "Berkey", "Berkley" or any other word or arrangement of words deceptively similar to "Berkley" is attached, affixed or displayed.

(*c*) In any way using the name "Berkey", "Berkley" or any other word or arrangement of words deceptively similar to "Berkley" in and about the sale of ties, scarfs, cravats and similar neckwear or otherwise without the consent of plaintiff herein.

(*d*) From making any use of the words "Berkey", "Berkley" or any other word or arrangement of words deceptively similar to "Berkley", or uttering or displaying the same orally or in any printed or written form in the conduct of his business or in any business transaction related to ties, scarfs, cravats or similar neckwear, whether attached to merchandise or detached from and independent of such merchandise on invoices, letterheads, bills or advertisements, without the express consent of plaintiff herein.

2. That said defendant shall pay the costs of this proceeding.