### BARTON et al. v. REX–OIL CO., Ino.

(District Court, W. D. Pennsylvania. April 16, 1923.)

1. **Trade-marks and trade-names and unfair competition ⊕⊃3(4)—"Dyanshine" held descriptive, and invalid as trade-mark for leather polish.**

   The name "Dyanshine" for a preparation for dyeing and polishing leather *held* invalid as a trade-mark as descriptive, and its registration or use not to preclude the lawful use by another of the words "Dye and Shine," of which words it is a corruption, as descriptive of his product.

2. **Trade-marks and trade-names and unfair competition ⊕⊃3(4)—Protection In use of name which has acquired secondary meaning.**

   While a manufacturer by long use may be entitled to protection in the exclusive use of a name with which his product has become identified, though invalid as a technical trade-mark, because descriptive, such protection does not extend to the exclusion of the use by others of other properly descriptive words which, though similar, are not the same.

3. **Trade-marks and trade-names and unfair competition ⊕⊃70(3)—Facts held not to establish unfair competition.**

   The sale by defendant of a shoe polish under the name of "Victory Dye and Shine" *held* not to constitute unfair competition with complainant's product, which was plainly labeled "Barton's Dyanshine," where there was no other resemblance between the dress of the two products, each bore the name of the manufacturer, and they were unlike in composition.

4. **Trade-marks and trade-names and unfair competition ⊕⊃28—Extensive use necessary to establish secondary meaning of descriptive word.**

   To establish as a fact that a trade-name, insufficient as a trade-mark, has acquired a secondary meaning, identifying it with a particular product with long use and a wide sale, must be shown, and sale in a limited field for a short time is not sufficient.

In Equity. Suit for infringement of the registered trade-mark "Dyanshine," and for unfair competition, by Warren D. Barton and others against the Rex-Oil Company, Incorporated. Decree for defendant.

Edward S. Rogers, Frank F. Reed, and Allen M. Reed, all of Chicago, Ill., and Edward A. Lawrence, of Pittsburgh, Pa., for plaintiffs.

Edgar T. Brandenburg and J. F. Brandenburg, both of Washington, D. C., and Edgar W. McCallister, of Pittsburgh, Pa., for defendant.

GIBSON, District Judge. The plaintiffs herein seek to enjoin the defendant company—

"from using in connection with the manufacture and offering for sale or sale of any polish or dressing for leather goods or goods of substantially the same descriptive properties plaintiffs' trade-mark 'Dyanshine,' or the colorable imitation, 'Dye and Shine,' or any other colorable imitation thereof, and further from using any name or names, device, artifice, or contrivance calculated to induce the belief that the defendant's product is the plaintiffs.' "

The facts, as they have been made to appear to the court, are substantially as follows:

In July, 1918, Warren D. Barton, a leather worker of Waco, Tex., evolved a certain preparation designed to both dye and polish leather. This preparation was sold, at first in a small way, at Camp McArthur, where it became popular. In time demands therefor came from other camps, and in July, 1919, there was a considerable demand for it. By that time the inventor had associated with him several partners, and two or three traveling salesmen were employed. The business continued to grow, and by the first part of 1920, 25 or 30 salesmen were engaged in selling the product. It was used chiefly in the South and Middle West, but the demand for it was not wholly confined to those parts of the country.

From the first the product was sold as "Barton's Dyanshine," and on June 1, 1920, the trade-mark "Dyanshine" was registered, the declaration having been attested on May 21, 1919. The price of "Barton's Dyanshine" was 50 cents per bottle. Some time after the original "Barton's Dyanshine" was placed upon the market, plaintiffs put out other dressings for leather to which the term "Dyanshine" was also applied.

Prior to 1920, according to the testimony of one of the plaintiffs, plaintiffs had not advertised their product to any considerable extent; such as had been done being mainly in the shape of cards for display in the shops of vendors of the polish and of novelties. In 1920, and thereafter, considerably more money was used in advertising; the newspapers, principally in the South and West, being employed from time to time for the purpose. Plaintiffs allege that they expended in advertising the sum of $22,237.97 in 1919, $39,828.15 in 1920, and $80,740.58 in 1921. (The present action was instituted on April 15, 1921.) This testimony is denied by defendant, which produced a witness who had acted as an agent for the plaintiffs from January to October, 1920. He testified that he had never seen any newspaper advertising of the plaintiffs, and that in April of 1920 they boasted that their business had been built up with an expenditure of $27 for advertising. Prior to beginning the present case plaintiffs undoubtedly expended considerable amounts in advertising.

In 1903, one Oral D. Logan began, in a small way, the manufacture of shoe polishes and dressings. He did business under the name of the Rex Oil Polish & Dye Works. In 1918 a corporation of this name was formed to continue the business; the name being changed in 1919 to the "Rex-Oil Company, Incorporated." In this period various shoe dyes and polishes had been put on the market. In 1921, perhaps six or seven different articles, polishes, dyes, and cleansers were being sold by this company, among them a combined stain and polish for brown shoes. In 1920 it began the sale of a combined dye and polish, first under the name of "Rex-Oil Dye and Shine," which was soon changed to "Victory Dye and Shine." This article was first sold in Pennsylvania and contiguous states; but in the winter of 1920–1921 several agents began selling the preparation in the Southern States, where it came into competition with plaintiffs' product, "Barton's Dyanshine." Thereupon some dealers began to sell "Victory Dye and Shine," ceasing to sell "Barton's Dyanshine" in some cases; others

sold both products, and still others continued to sell only Barton's preparation. At this time the plaintiffs had been manufacturing their product for a little more than two years, and had been advertising it in newspapers and magazines, although not very extensively, for about one year.

[1] We are first called upon to determine whether or not the word "Dyanshine" is valid as a technical trade-mark. After a careful consideration of this issue, we have come to the conclusion that it is not, because it is descriptive, and therefore invalid, both at common law and under the statute. The proof that it is descriptive is found in the bill in this case, wherein the plaintiffs seek to enjoin defendant from the use of common English words which correctly describe its product, because they are a "colorable imitation" of the word "dyanshine." The statute relative to the registration of trade-marks is, in part, as follows:

"Provided, that no mark which consists * * * merely in words or devices which are descriptive of the goods with which they are used, or of the character or quality of such goods, or merely a geographical name or term, shall be registered under the terms of this act." Comp. St. § 9490.

The plaintiffs are seeking in this action to do the very thing which the statute was designed to prohibit. They are endeavoring to prevent others from using ordinary words to describe their product, and to monopolize the same words, in substance, to describe their own goods. We are inclined to the belief that the bill of complaint would have been more nearly correct had it stated that the word "dyanshine" was an imitation of the words "dye and shine," instead of the reverse.

Nor does this descriptive trade-mark become any the less invalid by reason of the fact that it is a combination and misspelling of the words "dye and shine"; its necessary pronunciation being the same. As illustrating this principle, it is perhaps sufficient to cite Ungles-Hoggette Mfg. Co. v. Farmers,' etc., Co., 232 Fed. 116, 146 C. C. A. 308, and Trinidad Asphalt Mfg. Co. v. Standard Paint Co., 220 U. S. 446, 31 Sup. Ct. 456, 55 L. Ed. 536. In the former case, the court (C. C. A. 8th Cir.) held the word "Dridip" invalid as descriptive, it being a misspelling of "dry-dip." "Dridip" had been registered as a trade-mark. In the latter case the court declared that "ruberoid," a misspelling of "rubberoid," was not a legal trade-mark. The following is quoted from the opinion:

"We think the evidence supports the conclusion of the Circuit Court of Appeals. The only imitation by the asphalt company of the roofing of the paint company is that which exists in the use of the word 'rubbero,' and this only by its asserted resemblance to the word 'ruberoid.' To preclude its use because of such resemblance would be to give to the word 'ruberoid' the full effect of a trade-mark, while denying its validity as such. It is true that the manufacturer of particular goods is entitled to protection of the reputation they have acquired against unfair dealing, whether there be a technical trade-mark or not; but the essence of such a wrong consists in the sale of the goods of one manufacturer or vendor for those of another. Elgin National Watch Co. v. Illinois Watch Co., supra. Such a wrong is not established against the asphalt company. It does not use the word 'rubbero' in such a way as to amount to a fraud on the public."

We have had little difficulty in arriving at the conclusion that the plaintiffs' word "Dyanshine" is invalid as a technical trade-mark.

This conclusion, as we view the matter, requires the denial of any prayer for an injunction to restrain the defendant from the use of the words "dye and shine" to describe its product. To paraphrase the words in the opinion of the court in Asphalt Mfg. Co. v. Standard Paint Co., supra, to preclude its use (words "dye and shine") would be to give the word "dyanshine" the full effect of a trade-mark, while denying its validity as such.

[2] It is true that the plaintiffs have offered a considerable amount of testimony which tended to establish their claim that the word "dyanshine," by use in business and advertising, had acquired a secondary meaning, wherein the original descriptive nature of the word was lost. It is claimed that the word has come to indicate to the public shoe dressings of plaintiffs' manufacture, and that it should be protected in the trade-name, even though the court were of the opinion that the word could not be claimed as a technical trade-mark.

It is well established that rights may be acquired to a descriptive trade-name, by long and undisputed use, and by advertising and other exploitation of it, which will be protected to the extent that rivals will be enjoined from using it to deceive the public, by inducing the belief that the goods of the rivals were the goods manufactured by the person who has properly used it. If the defendant had used the word "dyanshine" in labeling or advertising its goods, we should undoubtedly be required to determine whether or not such a secondary meaning had been acquired as would require an injunction against its use to protect plaintiffs' rights. Such use of the word would, in itself, go far to establish unfair competition on the part of the defendant. But the evidence introduced in this case does not establish such use of the composite word. Certain of plaintiffs' testimony tends to indicate the possibility of confusion on the part of purchasers between plaintiffs' and defendant's polish by reason of the pronunciation of each product being the same, but none was offered to show any written or printed use of the word "dyanshine" by the defendant.

Defendant should not be enjoined from the use of the words "dye and shine" to describe its product, and, in the absence of any proof of its use, no need exists for an injunction to prohibit its use of the word "dyanshine." All unfair competition, however, is not confined to violations of a valid trade-mark, or to the use of a trade-name which is invalid as a trade-mark, but is entitled to protection by reason of the fact that use or advertisement has given it a secondary meaning. An example is found in the case of Lilly & Co. v. Wm. R. Warner & Co., 275 Fed. 752, recently decided by the Circuit Court of Appeals of this circuit. The court held that plaintiffs' word "Coco-Quinine" was invalid as a trade-mark, and refused to enjoin the use of the word "Quin-Coco" by the defendants; but, finding that defendants had specifically devised their preparation as a substitute for plaintiffs' product, and in exact imitation of it, and were selling it on the representation that it could be substituted at less cost for plaintiffs' preparation, where the latter was prescribed by physicians, the court took steps to protect the public from the fraud.

288 F.—56

[3] We have examined the record with some care to determine whether or not the testimony establishes the claim of unfair competition made by the plaintiffs. The contentions of the plaintiffs would make this case parallel in many respects to Lilly & Co. v. Warner & Co., supra, but the record does not bear out those contentions. In that case the defendant's product was in exact imitation of that of the plaintiffs, while in this the only point of resemblance between the respective preparations is found in the use of the word "Dyanshine" by plaintiffs, and of the words "Dye and Shine" by ,defendant. In chemical composition the polishes do not resemble each other. The cartons in which they are packed are different in shape, as are the bottles containing the fluid. The plaintiffs' cartons and bottles have thereon in large letters the inscription, "Barton's Dyanshine," and the name of the manufacturers, "The Barton Mfg. Co., Waco, Texas." The defendant's cartons and bottles at one time bore the inscription, "Rex-Oil Co.'s Dye and Shine" in large letters, this inscription being later changed to "Victory Dye and Shine," and had thereon the name of the manufacturer, the Rex-Oil Company, of Pittsburgh. Barton's cartons showed the price to be 50 cents, while the Rex-Oil Company's gave the price as 25 cents. Defendant's Victory Dye and Shine cartons also had thereon a print of an aeroplane. The products of plaintiffs and defendant were so different in appearance, when prepared for sale, that defendant could have had no reasonable anticipation of the fraudulent substitution of its Dye and Shine for the Dyanshine of the plaintiffs among purchasers able to read or acquainted with the last-named product.

The plaintiffs have offered the testimony of a number of witnesses to prove, first, that "Dyanshine," at the time of the alleged infringement, had attained a secondary meaning whereby the word no longer was understood by the public to be descriptive of a dye and polish, but indicated goods of plaintiffs' manufacture; and, second, that defendant sold its "Dye and Shine" by suggesting to dealers that it could be substituted for plaintiffs' "Dyanshine" at a profit when the latter product was demanded by purchasers. The testimony is not convincing as to either of these two contentions of the plaintiffs. A number of dealers were examined. They had handled Barton's Dyanshine when it was the only dye and shine in the market—at least in their market. When asked such a question as, "When a customer came into your store and asked for dyanshine (dye and shine), what article did you think they desired?" they naturally replied: "Barton's Dyanshine."

[4] But to establish as a fact that a trade-name, insufficient as a trade-mark, had acquired the secondary meaning claimed, something more is required than the sole possession of a limited field for a short time. The article bearing such trade-name must be almost universally known, and must have been in use long enough to have come to the knowledge and to have received the acquiescence therein of the public. A. may sell "Sure-Catch Mouse Traps" in California for five years, and B. may sell a similar article under the same name and for a like period in Massachusetts. A. could not prevent B. from coming into his territory and selling "Sure-Catch Mouse Traps," by fair

methods, merely because he had no competition in his immediate locality for a time, and because by certain dealers "Sure-Catch" traps were understood to be traps of A.'s manufacture. ·

As to plaintiffs' allegation that defendant was selling his dye and shine upon representations that it could be substituted for Barton's Dyanshine, the evidence is also not sufficient to justify a finding to that effect. Several witnesses, it is true, stated in their affidavits that defendant's agent, when offering his goods to them, had pointed out to them that this article could be used when a customer asked for dyanshine. In one instance, a clerk, who had refused to look at the goods, is alleged to have been told that the Rex-Oil product could be substituted for Barton's. Later, he states that he "understood it that way." In another instance, the dealer has given two affidavits; one alleging, and the other denying, that the agent pointed out the chance to substitute one product for the other. It will be noted that this witness never handled Barton's Dyanshine.

Defendant's agents positively deny any such methods of sale. A large number of dealers were examined on behalf of both plaintiffs and defendant, who testify to no such methods. In our judgment the testimony makes it plain that no general plan existed for the sale of the defendant's product by the representation that it could be substituted for plaintiffs' dressing, and does make it doubtful whether even a few dealers were solicited to buy it upon such inducement. As stated before, the appearance and size of the cartons containing the respective polishes differed so greatly that it was possible to palm off one product for the other only upon the very indifferent and careless. This is not a case like Lilly & Co. v. Warner & Co. (C. C. A.) 275 Fed. 752, where the public was helpless in case of substitution.

In their bill of complaint, plaintiffs allege certain other matters which have not been sustained by the evidence. For example, they allege that defendant put upon the market, under another name, to compete with plaintiffs' product, the same product which it later called "Dye and Shine." This product, it is alleged, was inferior to plaintiffs' "Dyanshine" and met with no success, and thereupon defendant pasted labels on the cartons, and sold the dressing as "Dye and Shine" in the territory where "Dyanshine" was well known. The only evidence to sustain this allegation was the introduction in evidence of certain cartons with "Dye and Shine" labels pasted thereon. This was explained by defendant's witnesses as due to a lack of cartons at the time. On behalf of the defense it was also testified, without denial, that its "Dye and Shine" was an entirely different preparation than its "Fast Brown Leather Dye." No evidence of inferiority of one product to the other was offered, unless inferiority is to be inferred from the fact that one product, in a slightly smaller bottle, sold for 25 cents, and the other for 50 cents.

Holding, as we do, that plaintiffs' trade-mark "Dyanshine" is invalid as descriptive, that defendant may lawfully use the words "Dye and Shine" to describe his product, and that the evidence does not establish any unfair competition on the part of the defendant, the prayers of the bill of complaint must be denied.