## CLOROX CHEMICAL CO. v. CHLORIT MFG. CORPORATION et al.

### No. 8579.

District Court, E. D. New York.

Nov. 25, 1938.

Cook, Nathan, Lehman & Greenman, of New York City (Mortimer Brenner, Thomas Epstein, and Morris L. Levinson, all of New York City, of counsel), for plaintiff.

Abraham S. Robinson, of New York City, for defendants.

MOSCOWITZ, District Judge.

This is an application made by Clorox Chemical Company, plaintiff, for a preliminary injunction against Chlorit Manufacturing Corporation, Meyer Feldman, and Harry L. Senderoff, the defendants herein. The defendants Feldman and Senderoff are officers and agents of the Chlorit Manufacturing Corporation.

The following relief is demanded:

"That the defendants, their officers, servants, agents, employees and attorneys, and those acting in privity or in concert with them, or any of them, be pendente lite and permanently enjoined and restrained:

"(a) From using the name 'Clorox', 'Chlorit', or the trademark 'Clorox', or any name or symbol resembling Clorox or Chlorit, as part of any corporate or tradename of any defendant, or in connection with any of their products, or with any business of manufacturing or selling any of their products;

"(b) From using a label with a color combination of white and light or dark blue and pink or vermilion, and in such a way as to cause confusion with the product of the plaintiff herein;

"(c) From using the picture of a clothesline on a label;

"(d) From displaying in any manner, shape or form in connection with the manufacture or sale of any of their products the mark or symbol 'Chlorit' or the trademark 'Clorox', or from using in connection with their business the trademark 'Clorox', or the symbol 'Chlorit', and from using on any letterhead, billhead, or circular, or any media of advertisement, any name thereon resembling the name and trademarks of plaintiff herein;

"(e) From doing any act or making any representation likely to induce the public to believe that plaintiff is carrying on the business carried on by defendants, or that defendants have authority from plaintiff herein to use the trademark 'Clorox' or the name 'Chlorit', or any trademark of plaintiff in connection with the defendants' business;

"(f) From doing any act likely to induce the public to believe that defendants or any of them are entitled to the use of plaintiff's name or trademarks, or any name or symbol resembling plaintiff's name or trademarks as being the successor of the plaintiff, and from, in any way intermeddling or interfering with plaintiff's trademark and name."

Both the plaintiff and the defendants are engaged in the business of manufacturing and selling a bleaching, cleansing, antiseptic and germicidal compound in liquid form. Plaintiff's product is known as "Clorox" and defendants' as "Chlorit".

Electro-Alkaline Company in about February 1915 adopted and began the use of the name of "Clorox" and registered the name of "Clorox" in the United States Patent Office. Clorox Chemical Corporation became the successor in business to Electro-Alkaline Company in 1922, and in 1928 plaintiff succeeded the Clorox Chemical Corporation. It appears therefore that since 1915 the plaintiff and its predecessors have been manufacturing "Clorox" under that name.

About August 1936 the defendant Chlorit Manufacturing Corporation was organized and began selling its product under the name "Chlorit".

The plaintiff is evidently a firm of great financial responsibility. During the last seven years it has spent $6,000,000 in advertising "Clorox". In the year 1937 it spent $1,000,000 in advertising. The total sales of "Clorox" in New York amounted to $700,000 in 1937 and the total sales for that year amounted to $3,600,000. The plaintiff's capital stock consists of 120,000 shares of no par value common stock, of which 113,756 shares are outstanding of the paid-in-value of over $1,200,000.

The Chlorit Manufacturing Corporation, according to its financial statement as of October 29, 1938, shows current assets in the sum of $10,094.47 consisting of $1,912.-19 in cash, accounts receivable $3,312.36, inventory $4,869.92; current liabilities $6,-917.96. It therefore is not in a financial position to pay plaintiff's damages that have accrued and will accrue as a result of the sales of "Chlorit".

Plaintiff's product "Clorox" and defendants' product "Chlorit" are both sold in long, round, amber-colored bottles and are identical in shape and color. The name "Clorox" is blown into the glass around the neck and shoulders and on the bottom of the bottle. The name "Chlorit" is blown into the glass around the shoulders and on the bottom of the bottle. Affixed to the "Clorox" bottle is a rectangular label, having a light blue background, in the middle of which is a vermilion diamond with a dark blue center. Affixed to the "Chlorit" bottle is a label with a background of light blue and various shades of vermilion and dark blue with the name of "Chlorit" printed thereon in white letters. On the "Clorox" bottle the word "Clorox" is printed in white letters in the center of the diamond. On the label of the "Clorox" bottle is a picture of a clothesline with various articles of clothing hanging therefrom and around the diamond there is printed words describing the product. The "Clorox" label (Exhibit A annexed to the complaint) contains the following:

1. "Bleaches-Deodorizes-Disinfects";

2. "Germicide-Disinfectant";

3. "No Lime or Acids in This Solution";

4. "Liquid Cleaning Washing Compound";

5. "Trade Mark Reg. U. S. Pat. Off.";

6. "Tested and Approved by Good Housekeeping Institute".

When "Chlorit" was first manufactured the label (Exhibit E annexed to the complaint) contained the following:

a. "Bleaches, Deodorizes, Disinfects"

b. "Germicide"

c. "Contains No Lime or Acids"

d. "Cleaning Compound"

e. "Reg. U. S. Trade Mark Pat. Off."

f. "Cleans Clothes Clean".

After the defendants received plaintiff's notice of claim of infringement and unfair competition they continued to use the same form of label (Exhibit E annexed to the complaint) but added a small seal entitled, "American Institute of Food Products N. Y." See plaintiff's Exhibit H annexed to the complaint and defendants' Exhibit I annexed to the affidavit of Abraham S. Robinson, verified October 10, 1938.

Clorox former label (Exhibit C annexed to the complaint) which was used prior to its present label, Exhibit A, in addition to carrying the items 1 to 6, inclusive, above set forth, also had item 7, "Washes Clothes Clean".

During about January 1937 defendants applied for a trademark for the word "Chlorit" and for their label in the United States Patent Office to which plaintiff filed a notice of opposition. Thereafter, the defendants made an effort to abandon the application for a trademark. Upon the plaintiff's objection the abandonment was refused by the examiner. On May 16, 1938 the examiner denied the registration of the word "Chlorit" and defendants' label, (Exhibit G annexed to the complaint).

■ The presumption of validity attends the registration of the plaintiff's trade-mark "Clorox". Van Camp Sea Food Co., Inc. v. Packman Bros., D. C., 4 F.Supp. 522, affirmed, 3 Cir., 79 F.2d 511.

■ The name "Clorox" is not descriptive of plaintiff's product. The main active ingredients of "Clorox" are about 5% sodium hypochlorite and a small quantity of sodium carbonate. "Clorox" is a fanciful word, arbitrarily selected and in no wise describes its ingredients. The word "Chlorit" is likewise an arbitrary, fanciful word and does not describe the defendants' product or its ingredients.

The Court in Winthrop Chemical Co., Inc. v. Blackman, 150 Misc. 229, 268 N.Y.S. 647, decided that the word "Theominal" was not descriptive and was infringed by the use of the word "Theobrominal" by the defendant.

The Court in the case of Battle & Co. v. Finlay, C.C., 45 F. 796, decided that the word "Bromidia" was not descriptive of bromide of potassium.

The Court in N. K. Fairbank Co. v. Central Lard Co., C.C., 64 F. 133, decided that the word "Cottolene" was infringed by the word "Cottoleo", both of which were cottonseed oil products.

The Court in the case of Nu Enamel Corp. v. Nate Enamel Co., Inc., 243 App. Div. 292, 276 N.Y.S. 930, affirmed 268 N.Y. 574, 198 N.E. 411, decided that the words "Nu Enamel" were not descriptive and were infringed by the words "Duo Enamel".

The Court in the case of Allen v. Walker & Gibson, D.C., 235 F. 230, decided that the word "Cedarine" was not descriptive and was infringed by the words "O-Cedar".

The Court in the case of Northam Warren Corporation v. Universal Cosmetic Co., 7 Cir., 18 F.2d 774, decided that the word "Cutex" was not descriptive and was infringed by the word "Cuticlean".

The Court in Northwestern Consol. Milling Co. v. Mauser & Cressman, C.C., 162 F. 1004, decided that the word "Ceresota" was not descriptive and was infringed by the word "Cressota".

■ The test to be applied in the determination of this motion is, whether or not the product is likely to confuse the buying public, and about that there can be no question. The general appearance of the defendants' bottles, the placing of the labels, and the labels themselves are almost identical with that of the plaintiff's product. The bottles. the coloring of the bottles, the size and shape of the bottles, the arrangement of the printed matter, the figures and the labels themselves, the coloring on the labels, and the general appearance of the defendants' product are so similar to that of the plaintiff's that the ordinary purchaser would be confused.

The following language which I used in the case of Martini & Rossi, Societa Anonima v. Consumers'-People's Products Co., Inc., D.C., 57 F.2d 599, is peculiarly applicable here [page 600]:

"In making purchases the purchaser does not have the two sets of labels before him, nor are the bottles side by side, the purchaser must depend upon his recollection of the appearance of the product which he intends to purchase. There is no doubt that the purchaser on a close examination of both products could find certain differences. However, purchases are not made in that manner, and that would be an unfair test.

"An ordinary person would be misled in the purchase of the goods due to the similarity thereof if they were not displayed side by side. It is not necessary to analyze in detail the points of similarity. For every practical purpose the labels used by the defendants and the plaintiff are identical."

■ The purpose of the defendants is clear. They knew the plaintiff had built up a reputation after the expenditure of $6,-000,000 in advertising "Clorox" and they thought that they would be able to appropriate to themselves the plaintiff's good-will in "Clorox" by the use of the word "Chlorit". "Chlorit" sells for 15¢ a quart bottle, 2 quart bottle for 25¢, whereas "Clorox" sells at 15¢ a pint and 27¢ a quart. It can readily be understood why "Chlorit" is sold at a lower price than "Clorox" when it is realized that defendants are able to benefit by the plaintiff's advertising of "Clorox".

The selection of the word "Chlorit" was not a mere coincidence. It was a deliberate scheme on the part of the defendants. Fortunately a Court of Equity can extend its arm to protect the plaintiff in the use of the name "Clorox". To deny an injunction would cause irreparable damage to this plaintiff as the defendant corporation is of little financial responsibility. It could not possibly compensate the plaintiff for its damages.

Upon the settlement of the order to be entered upon this motion the Court will fix the amount of plaintiff's bond. Rule 65, subdivisions (c) and (d), of the Rules of Civil Procedure for the District Courts of the United States, 28 U.S.C.A. following section 723c, provide:

"(c) Security. No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained. No such security shall be required of the United States or of an officer or agency thereof.

"(d). Form and Scope of Injunction or Restraining Order. Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise."

Rule 65 subdivision (d) of the Rules of Civil Procedure for the District Courts of the United States provides that the injunction order must contain (1) the reason for its issuance; (2) it shall be specific in terms, and (3) it shall describe the act or acts sought to be restrained.

Settle order on notice.