**NATIONAL NU GRAPE CO. v. GUEST et al.**

Civil Action No. 1716.

District Court, E. D. Oklahoma.

Sept. 6, 1946.

Embry, Johnson, Crowe, Tolbert & Shelton, by Troy Shelton, all of Oklahoma City, Okl., and Smith, Kilpatrick, Cody, Rogers & McClatchey, by Ernest P. Rogers, all of Atlanta, Ga., for plaintiff.

Frank Dudley, of Oklahoma City, Okl., Arthur J. Marmaduke, of Duncan, Okl., and Loyal J. Miller, of Oklahoma City, Okl., for defendants.

RICE, District Judge.

### Findings of Fact

I. Plaintiff is a Georgia corporation with its principal office in Atlanta, Georgia, and the defendants are individuals residing in Duncan, Oklahoma, within the Eastern District of Oklahoma.

II. Plaintiff succeeded, in 1933, to the goodwill and business of NuGrape Company of America, a Delaware Corporation, and has since carried on its business of manufacturing and selling non-alcoholic beverages and syrups therefor.

III. Plaintiff's said predecessor adopted and used, from January, 1921, to plaintiff's acquisition of its goodwill and business in 1933, as a trade-mark for its said beverages and syrups the term "NuGrape," and plaintiff has, since, 1933, continuously used the said term as a trade-mark for its said beverages and syrups.

IV. Plaintiff, exclusive of its predecessor, has expended more than $800,000 in advertising its beverages and syrups; all of such advertising has carried and featured the trade-mark "NuGrape," and has been distributed or circulated throughout the United States. Plaintiff's sales of its products under the trade-mark "NuGrape" have been in a majority of the states of the United States, including the State of Oklahoma, and have amounted in the aggregate to more than $5,000,000. The plaintiff's product bearing the trade-mark "NuGrape" and reaching the ultimate consumer has been distributed through, and sold by, more than 200 bottlers and approximately 10,000 retail dealers.

V. The said trade-mark "NuGrape" was registered in 1923 in the United States Patent Office, under Federal Trade-mark Act of February 20, 1905, 15 U.S.C.A. § 81 et seq., in the name of plaintiff's predecessor, as Registration Number 164,168; the registration was acquired by plaintiff in 1933 in connection with its acquisition of the goodwill and business of NuGrape Company of America, has been renewed by plaintiff in its name and is now in effect upon the Federal Trade-Mark Register, under the Act of February 20, 1905, in the name of plaintiff.

VI. On August 29, 1939, plaintiff registered its trade-mark "NuGrape" with the Secretary of the State of the State of Oklahoma, and received as of that date a certificate to such effect under the seal of said state.

VII. The defendant James A. Guest is not and has never been engaged as a partner or otherwise in the manufacture or sale of non-alcoholic beverages and is not and has never been engaged in the manufacture or sale of beverages or syrups under the term "TruGrape."

VIII. The defendant James D. Guest is now and since July, 1942, has been engaged, under the trade style "The TruGrape Company," in the manufacture, sale and distribution of non-alcoholic beverages, syrups, and concentrates, and has since July, 1942, distributed and sold his said products under the term "TruGrape," which said term he employs and represents as a trade-mark for such products of his manufacture and sale. That said defendant's principal place of business is located at Duncan, Oklahoma, and his principal trade territory is the southern part of Oklahoma.

IX. Defendant's products bearing the term "TruGrape" have been sold and are now sold in interstate commerce and have been, and are now distributed and sold to the consuming public in the States of Oklahoma and Texas in bottles bearing the term "TruGrape" and the defendant's trade style and address, "The TruGrape Company, Duncan, Oklahoma."

X. In the year 1942, said defendant James D. Guest registered his said trademark "TruGrape" with the Secretary of State of the State of Oklahoma under the Oklahoma trade-mark registration statute, and since said time has inscribed and prominently shown on his said products underneath the inscription and display of the term "TruGrape" thereon the legend "T. M. Reg."

XI. Plaintiff protested both orally and in writing, against James D. Guest's use of the term "TruGrape." Such protests were first made upon such defendant's adoption of the said term and have continued.

XII. The non-alcoholic beverages and syrups of the parties are goods of the same class and possess the same descriptive properties.

XIII. Prior to the filing of this suit, the plaintiff sent two representatives into the trade territory of the defendant who called upon dealers in Anadarko, Chickasha, Marlow, Duncan, and Ardmore, being the principal towns in defendant's trade territory.

In some places of business, the representatives would ask for "NuGrape" and would be served "TruGrape." In other places, they would ask for "TruGrape" and would be served "NuGrape". In other places, when the representatives of the Plaintiff would ask for "NuGrape" or "TruGrape", as the case might be, the dealer would reply that he did not have the article asked for; and in some instances, the dealer would reply when asked for "NuGrape" that he did not have "NuGrape", but he did have "TruGrape". The percentage of instances when the representative was served one drink when he asked for the other was approximately 25%. I think the evidence showed that in 19 instances out of 80. In all, the representatives made approximately 132 calls.

XIV. The evidence on behalf of the defendant establishes the fact that the consuming public is not confused in purchasing either of these drinks. The bottles are different in appearance and size, the coloring is different, and the printed matter or wording of the face on each bottle is different. Any customer who desires a "NuGrape" and calls for it, upon being served a bottle of "TruGrape," would recognize instantly that he had not received what he asked for. On the other hand, a customer asking for a "TruGrape," upon being served a bottle of "NuGrape," would recognize instantly that he had not been served what he asked for. This ability to recognize the difference is from the dissimilarity in appearance rather than by any great dissimilarity in the name.

XV. My conclusion is that it is very probable that dealers may at times misunderstand which article a customer is calling for when reliance is placed upon the pronunciation of the two words by the average customer. I find that it did happen when representatives of the plaintiff Company called upon dealers, and from that, conclude that it will happen in instances when the ordinary customer is calling upon the dealer for one or the other articles by name.

XVI. The color and flavor of the defendant's product, the shape, size and appearance of his bottles, bottle crowns, and the arrangement, color, design and general appearance of the labels and markings on his bottles are in marked contrast to those used by plaintiff.

XVII. Although plaintiff has extensively advertised its product under the name of "NuGrape" over a considerable period of time and at considerable expense, the evidence shows that the primary significance of the term "NuGrape" in the minds of the consuming public is only the kind of beverage sold under that name. Bayer Co., Inc. v. United Drug Co., D. C., 272 F. 505, 509.

XVIII. The evidence fails to show any conduct on the part of the defendant, James D. Guest, tending to pass or "palm" off his product as that of plaintiff's. The evidence also fails to show any conduct, acts or practices on the part of said defendant, his agents, servants, representatives, and employees employed for the purpose of pirating the trade or business of plaintiff.

XIX. Prospective purchasers are not beguiled or misled by any conduct, act or practice employed by the defendant or by defendant's use of the term "TruGrape" in connection with the sale of his product into buying defendant's product under the impression that they are buying the product which the plaintiff manufactures and sells under the name of "NuGrape."

XX. By placing the bottled product of the plaintiff's side by side with the bottled product of the defendant, there is no likelihood that the ordinary purchaser, while exercising due care and caution, would be misled and deceived into accepting "NuGrape" as and for "TruGrape."

XXI. Plaintiff's suit originally was for infringement of its trade-mark and for damages. At the conclusion of the trial, plaintiff was granted permission and did file an amendment to its complaint seeking an injunction on the ground of unfair competition. Validity of the trade-mark was made an issue by the answer filed herein. In the alternative, the plaintiff seeks an injunction on the grounds of unfair competition. At the trial the plaintiff abandoned its claim for damages.

### Conclusions of Law.

I. This court has jurisdiction: First, by reason of the fact that the suit was

brought for an infringement of a registered trade-mark; second, by reason of diversity of citizenship and the amount in controversy being in excess of $3,000.

II. Registration of the term "Nu-Grape" as a trade-mark carries a presumption of validity. This presumption, however, does not preclude the Court from independently determining that question when the validity of a registered trade-mark is made an issue.

III. The word "NuGrape" is a combination of the words "new" and "grape," "new" being misspelled. The term "NuGrape" is descriptive and cannot be appropriated from general use and become the exclusive property of anyone. Armstrong v. Nu-Enamel Corporation, 305 U. S. 315, 59 S.Ct. 191, 83 L.Ed. 195. The Court concludes that the term "NuGrape," although registered, is not a valid trademark. Plaintiff contends that the term "NuGrape" has acquired what is by law termed a "secondary meaning." The burden was upon the plaintiff to prove its contention. The test of secondary meaning is whether the mark has become broadly known throughout the public as denoting products of a certain origin.

IV. If the term "NuGrape" is a valid trade-mark, plaintiff has the absolute right to its use and in a suit for an infringement of a valid trade-mark, if infringement is shown, fraudulent intent upon the part of the defendant will be presumed.

V. If the term "NuGrape" is not a valid trade-mark but has acquired a secondary meaning, plaintiff must prove facts showing wrongful or fraudulent intent in fact or justifying that inference from the inevitable consequences of the act complained of.

VI. The mere fact of using a term similar to one that has acquired a secondary meaning is not sufficient to show fraud. The use of a similar name by another to truthfully describe his own product does not constitute a legal or moral wrong even if its effect is to cause the public to mistake the origin or ownership of the product. Warner & Co. v. Lilly & Co., 265 U.S. 526, 44 S.Ct. 615, 68 L.Ed. 1161.

VII. Whether or not the term "NuGrape" under the facts in this case has acquired a secondary meaning as that term is used in law is doubtful. This, for the reason that to the ordinary consumer the term denotes the type of product rather than the producer or owner. In any event the right of the plaintiff to an injunction is founded upon the law of unfair competition, and the evidence does not support a charge of unfair competition. The defendant is not palming off his product as that of the plaintiff, and there is no reasonable probability that he will do so.

Plaintiff is not entitled to injunctive relief.

The attorney for the defendant will prepare appropriate decree in conformity with the foregoing Findings of Fact and Conclusions of Law and present to the Court for signing and entering at Ardmore, Oklahoma, on September 16, 1946, at 9:30 a. m.