A. & H. TRANSPORTATION, INC. ET AL. *v.* SAVE WAY STATIONS, INC. ET AL.

[No. 33, September Term, 1957.]

326

*Decided October 16, 1957.*

328

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*Lawrence I. Weisman* and *Albert L. Sklar,* with whom were *Nyburg, Goldman & Walter, David M. Blum* and *Sklar & Sullivan* on the brief, for appellants.

*Lawrence F. Rodowsky* and *Frank A. Kaufman,* with whom were *Frank, Bernstein, Gutberlet & Conaway* and *Howard H. Conaway* on the brief, for appellees.

BRUNE, C. J., delivered the opinion of the Court.

The plaintiffs, A. & H. Transportation, Inc. and Harry Waller, appeal from a decree of the Circuit Court of Baltimore City dismissing their bill for an injunction and an accounting against the defendants, Save Way Stations, Inc., ("Maryland Save Way Stations") a Maryland corporation, Save Way Stations, Inc., ("Pennsylvania Save Way Stations") a Pennsylvania corporation, and Meadville Corporation, ("Meadville") a New Jersey corporation, which owns all of the stock of the first two defendants. The injunction sought was to prevent the defendants' use of the name "Save Way" in the State of Maryland in connection with the operation of gasoline filling and service stations, and to prevent their use of any words similar to or simulating the trade-mark or trade name "Savon Gas", which is claimed by the plaintiffs. The bill also sought an accounting of profits and damages alleged to have been suffered by the plaintiffs as a result of allegedly unfair competition by the defendants.

The individual plaintiff, Harry Waller, is the owner of substantially all of the stock of the corporate plaintiff, A. &

H. Transportation, Inc. ("A. & H."). A. & H. operates four service stations in or near the City of Baltimore which are on land owned by the individual plaintiff Waller and his wife. These stations are leased by the Wallers to A. & H. The individual plaintiff Waller owns the alleged trade-mark "Savon Gas" and permits A. & H. to use this name in the operation of its filling stations.

On January 7, 1952, Waller registered the trade-mark "Savon Gas" with the Secretary of State of Maryland under the trade-mark law then existing, which was contained in Code (1951), Article 27, Sections 60 to 65.[1]

Section 63 of Article 27 provided for suits to enjoin the manufacture, use, display or sale of any counterfeit or imitation of trade-marks registered in accordance with Section 62 and for the issuance of injunctions and the award of damages.

Section 63 of Article 27 was repealed by Chapter 411 of the Acts of 1953, and it was also included among the sections repealed by Chapter 63 of the Acts of 1954. The latter Act repealed Sections 60 to 65, inclusive, of Article 27 of the Code (1951) and enacted in lieu thereof Sections 87A to 87N, inclusive, of Article 41 of the Code (1957 Supp.). Section 87A (a) defines a trade-mark as "any word, name, symbol, or device or any combination thereof adopted and used by a person to identify goods made or sold by him and to distinguish them from goods made or sold by others."

Section 87E (d) provides for continuing in force, for a period which may extend to ten years after the date of registration, any registration in force on June 1, 1954, and also makes provision for renewals.

In January, 1954, Waller filed an application in the United States Patent Office for the federal registration of the trade-mark "Savon Gas", and in December, 1955, which was after the institution of the present suit, Waller was notified that his application for registration had been examined and that the official examiner had passed the trade-mark for publica-

---

1. No question has been raised in this case as to whether or not a person other than a manufacturer of goods could register a trade-mark under Section 62 of Article 27.

tion in the *Official Gazette* of January 10, 1956. Nothing further is shown in the record in this case with regard to Waller's application for federal registration and we are not advised of any specific claim based thereon.

The plaintiffs' original filling station is located in the 4100 block of the Pulaski Highway, which is in the eastern part of the City of Baltimore, and the filling station belonging to Maryland Save Way Stations is located in the 6800 block of the Pulaski Highway, approximately two miles from the plaintiffs' station on that street. This suit was instituted a few days before the Maryland defendant's station was to be opened.

Meadville is a holding company which owns the stock of Maryland Save Way Stations, Pennsylvania Save Way Stations and of other service station corporations operating in other states. We shall refer to Meadville and its subsidiaries as the "Meadville group". One of its subsidiary companies, Houston Petroleum Company, has a large station of the partially self-service type at Linden, N. J. This was opened in December, 1949. It featured the word "Save" and the name "Save 5". This name was intended to signify that a customer could save 5¢ a gallon by buying gasoline at this station as against the price of so-called branded gasoline sold at stations owned by or affiliated with some major oil refining company. It soon became apparent, however, that such a price differential could not be maintained, and thereupon Houston changed from the name or slogan "Save 5" to "Save Way". Between June 20, 1950 and October 6, 1955, eleven more stations using the name "Save Way" were opened in other adjoining or eastern states by one or another of Meadville's subsidiaries. Of these, one was in New Jersey, four were in Pennsylvania, three were in New York, two were in Delaware and one was in Connecticut. In addition, the Meadville group also operates a number of gasoline filling stations in New England, New Jersey and Pennsylvania under the name "Merit", and the group has also operated and licensed one station in Michigan and one or two in Ohio under the name of "Giant". "Giant" stations are of the partially self-service type, as are all of the stations of the Meadville group which operate un-

der the name "Save Way". Attendants service the automobiles of customers at the "Merit" stations, but at both the "Giant" and the "Save Way" stations customers attend to such matters as wiping their own windshields, getting water for their radiators and air for their tires.

Maryland Save Way Stations was originally incorporated in 1949 under the name of "Save 5 Stations, Inc." It remained inactive until about the time of the construction of its station on the Pulaski Highway, though in 1949 Meadville caused a survey to be made of possible sites for service stations in the Baltimore area. In May, 1955, the name of Maryland Save Way Stations was changed from "Save 5 Stations, Inc." to "Save Way Stations, Inc."

The question on this appeal is whether or not the plaintiffs are entitled to an injunction prohibiting the defendants from using the name "Save Way" for one or more filling stations in Maryland. The answer depends upon, first, whether or not the plaintiffs have a valid trade-mark or trade name and, second, whether or not there is such similarity between the names used by the plaintiffs and the defendants as to be likely to cause confusion in the mind of the ordinary purchaser.

Questions of the protection of business names have been before this Court in a number of cases. Among the most recent are *Edmondson Village Theatre, Inc. v. Einbinder,* 208 Md. 38, 116 A. 2d 377 (1955), and *National Shoe Stores Co. v. National Shoes of New York, Inc.,* 213 Md. 328, 131 A. 2d 909 (1957), the opinions in which review the principles of law applicable to the present case.

The plaintiffs-appellants argue, but do not seem to put their main reliance upon the contention, that they have a technical trade-mark. This is the first of three categories of name protection into which the decided cases tend to fall. See *Nims on Unfair Competition and Trade-Marks* (4th Ed.) §§ 10, 11, and the *National Shoe* case, *supra,* 213 Md. at 335. The others involve fraud and deceit or common words which have acquired a secondary meaning.

Under the Maryland statute in force when the Savon Gas name was registered, the mere fact that the Secretary of State

had accepted a name for registration as a trade-mark was not determinative of whether or not that name can constitute a valid, technical trade-mark. *Sherwood Co. v. Sherwood Distilling Co.,* 177 Md. 455, at 460, 9 A. 2d 842. Our present law, Code (1957 Supp.), Art. 41, Sec. 87B (5), prohibits registration of a merely descriptive trade-mark unless it has "become distinctive of the applicant's goods", and permits the Secretary of State to accept five years' continuous use by the applicant as evidence that it has become distinctive. It is not, however, made conclusive evidence even for purposes of registration; and the validity of a trade-mark is clearly subject to attack in litigation. See Art. 41, Section 87H (4) and (5). Our new statutory law seems to be in accord with the *Sherwood Co.* case, *supra,* and with the rules recognized in the *Restatement, Torts,* §§ 715 and 720-722. See also U. S. C. A., Title 15, Section 1052 (e) and (f).

Because of the patently descriptive character of the term "Savon Gas", this name could constitute under common law rules a trade-mark only if it fell within one of the recognized exceptions to the rule stated in Section 715 (c) of the *Restatement, Torts.* That Section states (in part) that a trade-mark may not be "a designation descriptive of the goods or their quality, ingredients, properties or functions," unless it falls within one of the exceptions stated in §§ 720-722 of the *Restatement, Torts.* Of the three sections referred to, § 721 is the one here pertinent. The general rule there stated is this: "A designation cannot be a trade-mark for goods if it is likely to be regarded by prospective purchasers as a common name or generic name for such goods or as descriptive of them or of their ingredients, quality, properties, functions or uses." *Comment a* under that Section states in part: "That a designation may have a suggestive significance in connection with the goods does not render it inappropriate for use as a trade-mark. The test is the imaginativeness involved in the suggestion, that is, whether the suggestiveness is so close and direct that it is apparently descriptive and generally useful in approximately that form to all merchants marketing such goods or is so remote and subtle that it is fanciful and

not needed by other merchants of similar goods." [2] It is difficult to think of a term less subtle, less fanciful and less requiring of imagination to ascertain its meaning than "Savon Gas." The mere fact that the first "word" is a misspelling or corruption of the two words "Save" and "on" cannot give it vitality as a trade-mark. *Restatement, Torts,* § 725.

We conclude that the words "Savon Gas" do not constitute a valid technical trade-mark.

We turn next to the second category of cases of name protection—those involving fraud and deceit.

In the voluminous record extract in this case we find no evidence which would sustain such a charge, and it is indeed difficult to determine whether the plaintiffs undertake to press such a charge in this Court. We note that the word "Save" was featured by many gasoline service stations in other states selling gas at prices less than those prevailing at stations identified with major oil producers prior to the time when the plaintiffs began to use the name "Savon Gas" or sought

---

2. The following cases have held descriptive names comparable to "Savon Gas" invalid as trade-marks: "Dumore" (do more) for electrically driven machines, *Wisconsin Electric Co. v. Dumore Co.,* 35 F. 2d 555 (6th Cir., 1929), cert. granted 281 U. S. 710, 74 L. Ed. 1132, 50 S. Ct. 333 (1930), cert. dismissed 282 U. S. 813, 75 L. Ed. 728, 51 S. Ct. 214 (1931); "No-D-Ka" (no decay) for tooth paste, *No-D-Ka Dentifrice Co. v. S. S. Kresge Co.,* 24 F. 2d 726 (D. C. Mass., 1928); "Wornova" and "Slipova" (worn over and slip over) for clothing, *Wornova Mfg. Co. v. McCawley & Co.,* 11 F. 2d 465 (2nd Cir., 1926); "Dyanshine" (dye and shine) for shoe polish, *Barton v. Rex-Oil Co.,* 2 F. 2d 402 (3rd Cir., 1924), reversing on other grounds 288 F. 878 (D. C. W. D. Pa., 1923), modified on rehearing on other grounds 29 F. 2d 474 (3rd Cir., 1928); "Stabrite" (stay bright) for metal polish, *In re Chas. R. Long, Jr., Co.,* 280 F. 975 (D. C. Cir., 1922); "Textul" (textile oil) for wool cleaner, *In re Swan & Finch Co.,* 259 F. 990 (D. C. Cir., 1919); "NuGrape" (new grape) for soft drink, *National Nu Grape Co. v. Guest,* 69 F. Supp. 863 (E. D. Okla., 1946), affm'd 164 F. 2d 874 (10th Cir., 1947), cert. den'd 333 U. S. 874, 92 L. Ed. 1150, 68 S. Ct. 903 (1948). Cf. *General Shoe Corporation v. Rosen,* 112 F. 2d 561 (C. C. A., 4th, 1940) where the word "friendly" as applied to shoes was held to meet the test of being fanciful and requiring some exercise of the imagination.

to register that name as a trade-mark. In view of the publicity which some of the stations, particularly those on the West Coast, received in a publication of wide circulation in the petroleum industry, it seems difficult to believe that Mr. Waller was unaware of this use before "coining" (as he describes it) the word "Savon". (There is no suggestion from either side that the word "Savon" is of French derivation.)

He testified that he did not remember having read such articles prior to thinking of "Savon", and he also testified that he did not remember having seen an illustrated article in a national magazine of general circulation dealing with one of the Meadville group's stations, which featured the word "Save".

It is also to be noted that a gasoline service station was incorporated in Maryland under the name of "Save-More, Incorporated" in August, 1950. Also, as already stated, the Maryland corporate defendant was incorporated under the laws of this State as "Save 5 Stations, Inc." in November, 1949.

The plaintiffs also seek to derive support from alleged imitation of their station design by the defendants. The facts seem to be that the use of multiple pumps at a single gasoline "island" was not originated by any of the parties to this suit, but such a design had been used by others elsewhere, including corporations in the Meadville group, before the plaintiffs established their first "Savon Gas" station and long before the plaintiffs first used such a design at any of their stations. The same comments are applicable to placing islands at an angle to the highway upon which a station abuts.

The effort of the plaintiffs to show that the defendants imitated the color design of the plaintiffs' station shows the contrary to be the fact and also shows that the plaintiffs have closely followed the color design of the pumps of a large oil company. Indeed, the plaintiffs' Pulaski Highway station was formerly operated as a service station dispensing products of that very company.

The plaintiffs' main contention on the subject of trademarks and trade names rests upon the premise that they have established a secondary meaning for "Savon Gas", which en-

titles that name to protection in Maryland or at least in the Baltimore area, even though it may not constitute a technical trade-mark and even though it may be descriptive in its primary significance. They cite the substantial amounts of money which they have spent for advertising the name "Savon Gas", and the advertising media which they have employed. A careful review of the evidence fails to convince us that "Savon Gas" has acquired a secondary meaning as defined in the *National Shoe* case, *supra*, and in the case of *Baltimore Bedding Corp. v. Moses,* 182 Md. 229, 34 A. 2d 338. In the *National Shoe* case Judge Henderson quoted from the *Baltimore Bedding* case a passage taken from *Merriam Co. v. Saalfield,* 198 F. 369, 373, in which it was said that "It [secondary meaning] contemplates that a word or phrase originally, and in that sense primarily, incapable of exclusive appropriation with reference to an article on the market, because geographically or otherwise descriptive, might nevertheless have been used so long and so exclusively by one producer with reference to his article that, in that trade and to that branch of the purchasing public, the word or phrase had come to mean that the article was his product; in other words, had come to be, to them, his trade-mark."

Though a trade name is broader in scope than a trade-mark, yet "When a trade name denominates goods and is affixed to them, there is, as a practical matter, little legal difference between it and a trade mark." *Restatement, Torts,* § 716, *Comment a,* pp. 559, 560. Putting the name on the pumps from which gasoline is dispensed is regarded as equivalent to affixing the name to the goods. *Restatement, Torts,* § 719, *Comment b.*

What was said in the *National Shoe* case with regard to proof of secondary meaning is apposite in the present case. It was there stated: "In *Drive It Yourself Co. v. North, supra,* [148 Md. 609, 130 A. 57] a company that had been in business for eighteen months sought to enjoin a competitor from using the name 'Saunders Drive It Yourself System'. The respondent was a branch of a large organization with branches in many cities that had recently opened a branch in Baltimore. The Court held there was no proof of secondary

336

meaning and found (p. 618) that it 'would certainly not be justified in holding that the public generally in Baltimore understands the "drive it yourself" business to mean the appellant's business.' As stated in *Nims, Unfair Competition and Trade-Marks* (4th ed.), § 334: 'Secondary meaning must be proved by a fair preponderance of the evidence of an association between the name * * * and ' * * * seller in the minds of a substantial number of those members of the public who normally would be interested in the product and who might be purchasers of it.' See also *Hecht Co. v. Rosenberg*, 165 Md. 116, 119, and *Neubert v. Neubert*, 163 Md. 172, 174."

What seems to be the principal evidence in support of the plaintiffs' claim of having established a secondary meaning for "Savon Gas" consisted of evidence of the cost of 'their signs and advertising and the testimony of their advertising agent. He described the advertising campaigns and media which the plaintiffs had employed and then testified: "I think I can safely say that the name has an established standing in the community as a result of all this effort." This falls considerably short of meeting the test restated in the *National Shoe* case and quoted above, and little, if anything is added to its weight by the testimony of one of the proprietors of the "Save-More" stations with regard to confusion between "Save-More" filling stations and "Savon Gas" stations. We hold that the plaintiffs have failed to establish a secondary meaning for their otherwise merely descriptive trade name. Accordingly, the following statement of the law in the *National Shoe* case, *supra* (213 Md., at 338) is controlling: "It is the general rule, although there are cases to the contrary, that in the absence of proof of secondary meaning, no injunctive relief may be granted even though there is a possibility of confusion. See Note, 150 *A. L. R.* 1067. The Maryland cases cited seem to be in accord with the general rule."

Finally, even if there were sufficient proof of secondary meaning, the plaintiffs encounter the express finding of the trial judge that the defendants' use of the name "Save Way" does [not] and will not cause confusion to the ordinary pur-

chaser. Most of the plaintiffs-appellants' argument in this Court was directed to an attempt to upset that finding.

On the question of confusion of products, the appellants urge that elements of appearance,[3] sound [4] and meaning [5] and their probable effect upon the ordinary purchaser [6] and evidence of actual confusion [7] must all be taken into account. It is, however, true, as Nims, op. cit., § 320, points out that "'The names, marks and devices themselves are the most important evidence * * *." The correctness of the rules invoked as general propositions of law may be conceded. However, each case of alleged unfair competition must turn upon its own facts. Baltimore Bedding Corp. v. Moses, 182 Md. 229, at 237, 34 A. 2d 338.

The plaintiffs rely heavily upon the opinion of Judge Macgill in the Circuit Court for Howard County in a suit brought by themselves as plaintiffs against a corporation known as Lewpic, Inc. to enjoin the use of the trade-mark and trade name "Save-Go" in connection with the operation of Lewpic's service station. That case did not come to this Court on appeal. Judge Macgill found that "both parties * * * operate in the same territory, that the plaintiffs first employed the trade-name which they now seek to protect, that the stations operated by the parties are basically similar in appearance and operation and that the sound and appearance of the trade-names are sufficiently similar to be mistaken, one for the other by the casual or unwary purchaser."

---

3. Citing *Esso Standard Oil Co. v. Sun Oil Co.*, 229 F. 2d 37, cert. den. 351 U. S. 973 ("Univis" v. "Sunvis"); *Simmons v. Royal Bedding Co.*, 5 F. Supp. 946 ("Beauty Rest" v. "Beauty Sleep"); *Clorox Chemical Co. v. Chlorit Mfg. Corp.*, 25 F. Supp. 702 ("Clorox" v. "Chlorit") and other cases which seem to involve similarity of sound also.

4. Citing, *inter alia*, *Western Oil Refining Co. v. Jones*, 27 F. 2d 205 ("Silver Flash" v. "Super-Flash"); *Brown-Forman Distillery Co. v. Bloch Liquor Importers*, 99 F. 2d 708 ("Old Forester" v. "Old Foster").

5. *American Lead Pencil Co. v. Gottlieb*, 181 F. 178 ("Knoxall" v. "Beats-All").

6. *Florence Mfg. Co. v. Dowd*, 178 F. 73.

7. *Standard Oil Co. v. Michie*, 34 F. 2d 802.

Though we cannot tell with certainty, we get the impression that the validity of the plaintiffs' trade-mark or trade name was not in controversy, nor does the opinion lead us to believe that the defendant in that case sought to assert any right to use the word "Save" in some manner which would avoid confusion with the plaintiffs' name and thus challenge any exclusive right of the plaintiffs to use the word "Save" in connection with service stations of the type here involved. Judge Macgill's opinion does, of course, lend support to the plaintiffs' contention as to similarity of names in the instant case.

We note that Judge Macgill referred to testimony before him, which he seems to have considered in connection with the imitation of the plaintiffs' stations by the defendant, to the effect that the plaintiffs' multi-island design of its stations, with the service islands "placed according to the traffic angles developed", was "unique in the eastern part of the United States." The evidence on this matter in the present case is, as we have already noted, quite to the contrary—partly, we may add, by Mr. Waller's own admission.

Whatever the record or the controversies may have been in the "Save-Go" case, the decision of the Circuit Court for Howard County in that case is not binding against the present defendants, who were not parties to that suit nor is it a precedent binding upon this Court, though we may have (as we do) great respect for the views of the Judge who decided it. This case must stand on its own record and facts.

The plaintiffs' contentions in the present case on the subject of confusion seem to lead almost inescapably to the proposition that, although theoretically a competitor may use the word "Save" in connection with his business, practically he cannot do so, except with a disclaimer of connection with the plaintiffs or perhaps by using a word or phrase of such length as to be useless as a slogan, without unfair competition with the plaintiffs' rights in "Savon", "Savon Gas" and their newer version of "$AVON GA$", which features converting each "S" into a dollar sign. This would amount to giving the plaintiffs the full benefit of a trade-mark, although, as we have held, their alleged trade-mark is invalid. See *Bliss, Fabyan & Co. v. Aileen Mills,* 25 F. 2d 370 (4th Cir.).

The record clearly establishes what is a matter of common knowledge—that gasolines sold at filling stations not operating under the brand name of a major oil producer are customarily sold at lower prices than those sold at stations identified with the brand name of a major producer. Such a price differential, which may vary from time to time, but which is often about 2¢ a gallon on ordinary gasoline and about 3¢ a gallon on premium gasoline, is at the foundation of the business of stations selling gasolines not bearing a major brand name. The saving which gasoline users may effect by patronizing such stations is what brings in customers. This is simply a fact of life in the business in which the plaintiffs and defendants are engaged. It existed and was known long before the plaintiffs thought of the name "Savon". The words "Save" or "Savings" seem quite appropriate to describe a (perhaps the) principal characteristic of the business in which the parties are engaged.

In these circumstances, we think it clear that the defendants have the right to use the common and descriptive word "Save" in promoting the sale of their gasoline. Even if the plaintiffs had established a secondary meaning for "Savon" as applied to gasoline, they could not prevent the defendants from using such a descriptive word as "Save", so long as it was not so used as to mislead the ordinary purchaser into thinking that the goods sold by the defendants were those sold by the plaintiffs. In the latter event, the defendants might be required to take appropriate steps to avoid confusion, but would not be prohibited from using the word "Save". See the *National Shoe* case, *supra,* and *Neubert v. Neubert,* 163 Md. 172, 161 A. 16. (The latter case involved the use of a family surname in the same kind of business.) Unless some possibility of confusion on the part of the average purchaser were shown, there would be no occasion for granting an injunction. This was the view of the Chancellor, and he expressly found that there was no present or prospective confusion due to the defendants' use of the name "Save Way".

On this phase of the case, our problem under Rule 886 of the Maryland Rules is simply to determine whether or not the finding of the Chancellor on this question of fact was

clearly erroneous. In our judgment a finding of clear error would not be warranted upon the evidence before us. Most of the testimony as to actual confusion related to the "Save-More" stations and the plaintiffs' stations, not to the defendants' "Save Way" station. Other testimony was that of a retired executive of a large oil company who admitted that he had little familiarity with the plaintiffs' business. There was also testimony of a real estate agent who seems quite casually to have assumed that the new Save Way station was a Savon station because when he first read "Save Way" it said "Savon" to him.

To us "Save Way" neither sounds nor looks like "Savon" or "Savon Gas". The arrangement of the letters in the signs used by the plaintiffs and by the defendants is different. The plaintiffs spell out "SAVON" or "SAVON GAS" or "$AV-ON GA$" on a single line in block letters. (Their signs are not uniform.) The defendants also use block letters, but write "SAVE" horizontally and "WAY" vertically below the word "SAVE". Even after making allowance for the limited education and limited intelligence which the plaintiffs attribute to their customers, we still cannot say that the trial judge was clearly in error. He saw and heard the witnesses, saw the exhibits and examined the premises.

We find it unnecessary to prolong this opinion further by going into the defense that "Savon" infringes "Save-More" and is not entitled to protection against a third entrant into the field using the name "SAVE WAY" or by going into the defense based upon the fact that the defendants are using a part of the corporate name of Maryland Save Way Stations.

In accordance with the views above expressed, the decree appealed from is affirmed.

*Decree affirmed, with costs.*