Eli H. CHAYT and Edwin S. Chayt, co-partners t/a Darling Dress Shop,

v.

DARLING RETAIL SHOPS CORPORATION, a corporation organized under the laws of the State of Delaware.

Civ. No. 11089.

United States District Court
D. Maryland.

June 17, 1959.

Edward Pierson, Baltimore, Md., for plaintiffs.

Frank A. Kaufman and Lawrence F. Rodowsky, Baltimore, Md., for defendant.

THOMSEN, Chief Judge.

Plaintiffs, who have operated women's wearing apparel stores under the name "Darling Dress Shop" in or near Washington, D. C., for more than twenty-five years, have brought this action to enjoin defendant from opening such a store in the Washington metropolitan area under the trade name "Darling Shop" or any other name using the word "Darling". Defendant is a Delaware corporation, one of the many wholly owned subsidiaries of Darling Stores Corporation. The latter corporation and its predecessor partnerships have operated "Darling Shops" throughout the United States for nearly thirty years. Defendant filed a counterclaim seeking to enjoin plaintiffs' continued use of the word "Darling", but at the trial defendant reduced its demands to a prayer that plaintiffs be required to disclaim any connection with defendant.

Darling Stores Corporation was formed in June 1936. Its common stock

was issued in exchange for the assets of Max H. Gluck and George A. Gluck, who then constituted the partnership trading as "Darling Shops". Preferred stock was publicly offered. All of the common stock of Darling Stores Corporation is now owned by Max H. Gluck. The defendant corporation, its parent corporation and the several predecessor partnerships will be referred to collectively as defendants.

## Facts

In August 1929 defendants opened a retail store under the name "Darling Shop" for the sale of women's wearing apparel in Olean, N. Y. In September 1929 defendants opened a second "Darling Shop" in Warren, Ohio.

In March 1931 defendants opened "Darling Shops" in Hagerstown, Md. and Cumberland, Md., and since then have continuously operated a "Darling Shop" in each of those cities. Those stores are now operated by the defendant corporation.

In September 1931 defendants registered in Maryland the trade-mark "Darling Shop", to be used in connection with the manufacture and sale of ladies' and children's wearing apparel, underwear, millinery, accessories, fancy goods and notions, stating that the mark is to be attached to the merchandise which they sell and to signs erected on store fronts. That registration has been regularly renewed.

In December 1932 defendants applied to the United States Patent Office for registration of the trade-mark "Darling Shop" for ladies' dresses, coats and hats, and stated that the trade-mark is applied or affixed to the goods or to the packages containing the same by placing thereon a printed label on which the trade-mark is shown.

In September 1933 Eli H. Chayt, one of the plaintiffs, opened a women's wearing apparel store at 707–709 8th Street, S.E., Washington, D. C., under the name "Darling Dress Shop". At that time defendants were operating twenty-two "Darling Shops" in New York, Ohio, West Virginia, Maryland, North Carolina, Tennessee, Virginia, Michigan, Georgia and Indiana. None of those shops was located in what was then or is now the Washington metropolitan area and none of them advertised in that area.

Sometime in 1935 Chayt opened another "Darling Dress Shop" at 811 Pennsylvania Avenue, N.W. (Market Place), in Washington, which remained open for about a year. At that time defendants had extended their operations to include forty-six "Darling Shops" in various states as far west as Missouri, but defendants had no store in the Washington metropolitan area and did not advertise there.

In April 1936 defendants' attorneys wrote to plaintiffs, saying "we are informed that your use of a name very similar to our clients is primarily for the purpose of availing yourselves of the good will and reputation established by our clients in this country where it operates over fifty stores", and suggested that plaintiffs refrain from continued use of the name "Darling Dress Shops", "as otherwise our clients feel sufficiently aggrieved to take such steps in the matter as they deem necessary to afford them the protection to which they are entitled". Plaintiffs' attorney replied that "[t]heir trade name—Darling Dress Shops—has never been and will never be used to take advantage of the good will and reputation established by your clients or any other group of stores". Defendants' attorney wrote that this letter was unsatisfactory and asked that "a more definite statement issue in the form that your client will no longer continue to use the name now employed by it or any derivation thereof sufficient to cause mistake in identification or in connection with our client." Plaintiffs' attorney replied that he had been misunderstood; that he had not made any promise, and that the name which Chayt was using "is definitely based on a good will which he has established in the City of Washington". Defendants took no action and there was no further communi-

cation between the parties until September 1954.

In July 1937 the defendant corporation qualified to do business in Maryland, and in September 1937 notified the State Tax Commission that it had adopted its present name.

In 1937 defendants acquired the Goldrab chain of stores, and for about two years after August 1, 1937, defendants operated the former Goldrab store at 1207 G Street, N. W., Washington, D. C., under the name of "Darling Shop". This store was closed on June 30, 1939, when the lease expired.

In 1947 Edwin Chayt became a partner of Eli Chayt and plaintiffs opened another "Darling Dress Shop", a small store in the Coral Hills Shopping Center, in Prince George's County, Md. Coral Hills Shopping Center is a neighborhood center just over the southeast boundary of the District of Columbia, at the point where Alabama Avenue and Benning Road join to form the Marlboro Road, one of the principal roads connecting the City of Washington with communities in Prince George's County. At that time defendants were operating approximately one hundred "Darling Shops", but none of them was located in the Washington metropolitan area and none of them advertised in that area.

In October 1951 plaintiffs opened a store under the name "Darling Dress Shop" in the Langley Park Shopping Center, at the intersection of New Hampshire Avenue and University Boulevard in the northern part of Prince George's County, quite near the Silver Spring area of Montgomery County, almost due north of the Capitol. Plaintiffs' Langley store is somewhat larger than their Coral Hills store. At that time (1951) defendants were operating approximately one hundred fifteen "Darling Shops" but none of them was located in the Washington metropolitan area and none of them advertised in that area. The stores in Hagerstown and Cumberland were still the only stores which defendants operated in Maryland. Hagerstown is 70 miles from Washington, Cumberland, 135 miles.

In September 1954 attorneys for defendants wrote plaintiffs, again calling on them to cease using the name "Darling Dress Shop" and stating: "Not only does your use of the name 'Darling Dress Shop' infringe upon the long-established rights of our client but can serve only to mislead the public in Maryland where our client's business is well-known. * * * We ask that you write to us at once advising that you will cease promptly the use of the name Darling Dress Shop." Plaintiffs' counsel replied, asking for the locations and names of defendants' stores "in this area" and when each began business, so that he could state plaintiffs' position. Neither defendants nor their attorneys made any reply to that letter.

In 1955 plaintiffs closed their store on 8th Street in southeast Washington, because the neighborhood had greatly changed.

In October 1958 the defendant corporation signed a ten year lease for a store in the Penmar Shopping Center in District Heights, Prince George's County, Md. The center is on the Marlboro Road about three miles southeast from the Coral Hills Shopping Center, where one of plaintiffs' stores is located. Defendants' executive vice-president stated that he would not have signed the lease if he had thought there was any doubt about his being able to use the name "Darling"; but he knew of the correspondence between defendants' counsel and plaintiffs', and he made no effort to learn, by means of the telephone book or otherwise, whether any women's wearing apparel stores were using the name "Darling" in the Washington area. It is hard to believe that some representative of defendants had not canvassed the shopping centers in the Washington area before the lease was signed; defendants must have known of plaintiffs' stores.

Plaintiffs and defendants both specialize in low-cost women's wear. Defendants confine their operations to a narrow, deep line of such merchandise, which is often made up for them exclusively by manufacturers. Most of defendants' coats, suits, dresses and similar

merchandise carry a label imprinted with the trade-mark "Darling", although other trade-marks are sometimes used. Defendants do not sell nationally advertised brands. Most of defendants' stores are known as "Darling Shops" with the word "Darling", "Darling Shop" or "Darling Shops" over the doors and on their boxes and bags. Defendants have, however, for one reason or another, operated a number of stores under other names from time to time. Defendants' executive vice-president conceded that they could operate the Prince George's County store under another name, with unmarked boxes and bags, but only at considerable inconvenience and some expense, and with a loss of the good will associated with the name "Darling Shops" by people who have dealt with defendants in other cities, have seen their stores, or heard of their reputation. Defendants could not operate profitably if they were forbidden to use the word "Darling" on the labels on their coats, suits, dresses, and the like, or imprinted on their hosiery, plastic packaging, etc.

Defendants do little, if any, newspaper advertising except to announce the opening of a new store and very occasionally a special sale. Neither do they use radio or television advertising to any appreciable extent.[1] They do no national advertising, although on one occasion they participated in a single, isolated telecast sponsored by Pepsi-Cola. Defendants rely upon securing "100% maximum daytime female foot-traffic locations" for their stores, on the attractiveness of their windows, and on the good will and recommendations of satisfied customers.

Plaintiffs also specialize in low-cost merchandise, especially at Coral Hills. The store at Langley carries a medium-priced grade of merchandise as well as the cheaper grade. Plaintiffs make special purchases and carry a broader but much shallower line than defendants.

More than half of plaintiffs' business, especially at Langley, is represented by nationally advertised brands. Plaintiffs sew their store label "Darling Dress Shop" on most of their higher-grade merchandise along with the brand label. Plaintiffs' boxes, bags, etc., carry the name "Darling Dress Shop" and that name appears on the outside of their stores.

Over the years plaintiffs have run moderate-sized advertisements in the Washington daily newspapers at least once or twice a month, calling attention to particular merchandise at one or both of plaintiffs' stores. Those papers are widely read throughout the Washington metropolitan area, including all parts of Prince George's County, Md. Plaintiffs have also advertised over local radio stations serving the Silver Spring area or the Coral Hills area, and in the shopping papers serving those neighborhoods. Their total expenditures for advertising have averaged $9,000 a year for the past five years, about one-half of which was spent for advertising in the Washington daily newspapers. The balance of the money has been spent for local advertising and giveaways of various kinds.

A substantial part of the business of the Coral Hills store comes from along the Marlboro Road, some of it from District Heights, Forestville, and other places around and beyond the Penmar Shopping Center, where defendants' store will be built. There will be competition between plaintiffs' and defendants' stores.

Plaintiffs' stores have been modestly successful over the years. During the last four years net profits before partners' drawings have averaged $30,000 for the two stores.[2]

An appreciable number of prospective purchasers of women's wear would be likely to confuse a store operated by defendants under the name "Darling Shop"

---

1. Over a period of twenty-one years defendants have averaged around $1,000 per store per year for all newspaper, radio, TV and other advertising. This does not include the cost of dressing windows, and of signs and placards on and in their stores.

2. Since this action was filed, plaintiffs have opened a third store on Connecticut Avenue, just below the Mayflower Hotel, in Washington.

with the stores now operated by plaintiffs under the name "Darling Dress Shop", selling the same type of merchandise in the same general area.

## Discussion

Various sections of the Restatement, Torts, dealing with "Confusion of Source", have been cited with approval by the Court of Appeals of Maryland and by the Fourth Circuit. National Shoe Stores Co. v. National Shoes of New York, 213 Md. 328, 131 A.2d 909; A. & H. Transportation, Inc. v. Save Way Stations, Inc., 214 Md. 325, 135 A.2d 289; Little Tavern Shops v. Davis, 4 Cir., 116 F.2d 903, a Maryland case, opinion by Judge Soper.

■ The development of that branch of the law is discussed in a note, Restatement, Torts, Vol. III, p. 535 et seq. The law recognizes and protects a privilege to engage in business and to compete with others, despite the certainty or foreseeability of resulting harm to others who are already in business. The liability that is imposed is a qualification of that privilege, a qualification deemed necessary to adjust the conflict between the desire for competition and the desire for the security of the fruits of individual enterprise so as to achieve the maximum of desirable benefits of both. Ibid., pp. 537, 538.

■ One who (a) fraudulently markets his goods or services as those of another, or (b) infringes another's trademark or trade name, is liable to the other for appropriate relief, except to the extent that the other has by his own conduct disabled himself from claiming such relief. Ibid., sec. 711.

Neither plaintiffs nor defendants claim that their opponents are fraudulently marketing their goods or services as those of another. This case deals with the alleged infringement of a trade name.

■■ In popular usage "trade name" may mean simply the name or style under which a concern does business. Webster; O.E.D. But a designation is not a "trade name" within the meaning of the law of unfair competition or confu-

sion of source until through its association with the goods, services or business of a particular concern, it has acquired a special significance as the name thereof. This special significance, once acquired, is thereafter its primary meaning in the market. Restatement, Torts, sec. 716, and cases cited, supra. When, by association with a business, a trade name has acquired a special significance as the name thereof, it will be protected by the courts even though it may have been a descriptive term in its original meaning. Ibid., sec. 716, Comment a; Little Tavern Shops, supra, 116 F.2d at page 905; National Shoe, supra; Save Way, supra. Such special significance is customarily referred to as the "secondary meaning" of the designation.

The word "darling" might be used by a girl or by a woman of any age to describe a dress, a slip, or any other article of feminine wearing apparel. It is not a word which would ordinarily be used to describe a store. The evidence shows that it was chosen by plaintiffs and by defendants as the name for their respective stores because it suggested the type of merchandise they hoped their customers would think they carried.

■ The name "Darling" as applied to women's wear is not distinctive, unique or fanciful, and thus not subject to exclusive appropriation as a technical trade-mark. National Shoe, supra; Save Way, supra.

The question in this case is whether the word has in fact acquired a special significance or a secondary meaning: either

(a) in association with plaintiffs' business in the minds of the female purchasing public in the Washington metropolitan area, so that to that branch of the purchasing public the word has come to mean plaintiffs' stores; or

(b) in association with defendants' business or goods, and if so, in what market areas.

■ In National Shoe, 213 Md. at page 338, 131 A.2d at page 913, the Court said: "As stated in Nims, Unfair Com-

petition and Trade-Marks (4th ed.), § 334: 'Secondary meaning must be proved by a fair preponderance of the evidence of an association between the name * * * and * * * seller in the minds of a substantial number of those members of the public who normally would be interested in the product and who might be purchasers of it.' See also Hecht Co. v. Rosenberg, 165 Md. 116, 119, 166 A. 440, and Neubert v. Neubert, 163 Md. 172, 174, 161 A. 16."

■ Applying the tests prescribed by the Maryland cases to the facts set out above, I find that the designation "Darling Dress Shop" has been adopted and used by plaintiffs to denominate the business which they conduct and, through its association with that business over a period of more than twenty-five years, has acquired a special significance or secondary meaning in the Washington metropolitan area as the trade name of that business.

I further find that the designation "Darling" or "Darling Shop" has been adopted and used by defendants to denominate the goods which they market and the business which they conduct and, through its association with such goods and such business over a period of years, has acquired a special significance or secondary meaning as the trade name of defendants' goods and business in those areas in which defendants operate their stores, but that it has not acquired a special significance or secondary meaning in the Washington metropolitan area as the trade-mark of defendants' goods or as the trade name of defendants' business.

■ This brings us to the question whether defendants' proposed use of "Darling" or "Darling Shop" (a) in connection with their new store in Prince George's County, or (b) on the goods which they will sell there, would infringe plaintiffs' trade name. The general rule is well established:

"(1) One infringes another's trade name, if

"(a) without a privilege to do so, he uses in his business, in the manner of a trade-mark or trade name, a designation which is identical with or confusingly similar to the other's trade name, though he does not use the designation for the purpose of deception, and

"(b) the other's interest in his trade name is protected with reference to

"(i) the goods, services or business in connection with which the actor uses his designation, and

"(ii) the markets in which the actor uses his designation." Restatement, Torts, sec. 717(1).

■ Defendants' proposed use of the name "Darling Shop" for its store in Prince George's County would be confusingly similar to plaintiffs' trade name. Defendants claim, however, that plaintiffs' interest in its trade name is not entitled to protection in the State of Maryland against defendants' proposed use of the name "Darling" or "Darling Shop", even if such interest is entitled to protection in the District of Columbia, which defendants deny.

With respect to the District of Columbia, defendants rely on a claimed natural right of expansion and the failure of plaintiffs to take any action against defendants when defendants opened a "Darling Shop" in Washington twenty years ago. With respect to the State of Maryland, defendants add that they had stores in Hagerstown and Cumberland, that they had registered "Darling Shop" as a trade-mark for their merchandise, and that defendant corporation had qualified to do business in Maryland, all before plaintiffs opened their first store in Prince George's County; and that in the absence of any fraudulent intent the defendant corporation is entitled to use its corporate name.

In Food Fair Stores v. Square Deal Market Co., 93 U.S.App.D.C. 7, 206 F.2d 482, at pages 484, 485, certiorari denied 346 U.S. 937, 74 S.Ct. 377, 98 L.Ed. 426, the court said:

"Plaintiff-appellant's main contention on this appeal is that the District Court should at least have

found plaintiff entitled to exclusive use of the name 'Food Fair' in the Maryland counties adjacent to the District. It points out that it was indisputably first to make significant use of the name 'Food Fair' in Maryland as a whole. And it claims that 'significant use of a trade name within a state preempts the [whole] territory of that state for the prior user,' whether or not the state includes some areas which are economically oriented to or integrated with urban centers in other states. It thus concludes that, because of its unquestioned priority in Baltimore, the District Court should have treated the disputed Maryland counties separately from the District of Columbia and awarded them to plaintiff. We think appellant's position is untenable. It is supported, to be sure, by a dictum of Mr. Justice Holmes in a concurring opinion in Hanover Star Milling Co. v. Metcalf, 1916, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713, to the effect that rights in trade marks are statewide. But Mr. Justice Holmes' view has not found general acceptance, and we have no basis for thinking that it represents the law in the states bordering on the District of Columbia. Some of the territory of those states is commonly identified with the District, for purposes of retail trade and the like, as part of the Metropolitan Washington area. This accords with the economic reality of the situation, which we think must be controlling in the present context. Realistically, it is clear that the secondary meaning of the words 'Food Fair' must be the same in the Maryland and Virginia counties adjacent to the District of Columbia as it is in the District itself, inasmuch as this meaning was established principally by means of advertising in Washington newspapers circulating generally throughout the area. We therefore are not disposed to give state boundary lines the decisive significance which plaintiff would now attach to them. Cf. Terminal Barber Shops v. Zoberg, 2 Cir., 1928, 28 F.2d 807. On the record before us, the District of Columbia and the surrounding counties must be treated as a unit for present purposes. * * * "

So much, at least, of the D.C. Food Fair decision is persuasive here. There is nothing to the contrary in Maryland. The facts in the instant case, however, are quite different from the facts in the D.C. Food Fair case, and from the facts in other cases which have discussed expansion into other states. State laws differ also. See, e. g. Food Fair Stores v. Food Fair, 1 Cir., 177 F.2d 177.

Defendants have done no national advertising. Plaintiffs have done very little advertising compared with the Washington Food Fair, but have done considerable advertising in the Washington daily newspapers when the size and nature of plaintiffs' business are considered. Both have used the name so long in their respective areas, plaintiffs for more than twenty-five years, defendants for nearly thirty years, that we have in effect a case where both parties started to use the name at approximately the same time, in different localities. Plaintiffs were the senior user in the Washington metropolitan area, including Prince George's County. No effort to forestall the other can be attributed to either party. Restatement, Torts, sec. 732. Neither has sought to capitalize on the other's good will. Plaintiffs have opened and defendants plan to open their respective stores in Prince George's County as the result of a natural expansion of their respective chains, small or large. See National Shoe, 213 Md. at page 336, 131 A.2d at page 912; United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 101, 39 S.Ct. 48, 63 L.Ed. 141.

The failure of either party to take action against the other from the 1930's on must also be considered. Restatement, Torts, sec. 751. Defendants knew of plaintiffs' use of the name "Darling" at least as early as 1936, and wrote plaintiffs about it, but took no action even after defendants began to operate a "Darling Shop" in Washington in

1937[3] or after plaintiffs opened two "Darling Dress Shops" in Prince George's County, Md., in 1947 and 1951. Defendants sat by and allowed plaintiffs to spend a considerable amount in advertising and building up good will for their "Darling Dress Shops". Defendants have lost by laches any possible rights they might otherwise have had against plaintiffs.

On the other hand, plaintiffs took no action to prevent defendants from using the name "Darling Shop" in Washington in 1937. Although defendants operated their store in Washington only from 1937 to 1939, plaintiffs must have known that defendants were likely to expand into the Washington area sooner or later.

Defendants' registration of their trade-mark in Maryland at the time they opened their stores in Cumberland and Hagerstown gave them no prior rights in the Washington metropolitan area; however, plaintiffs were charged with notice that the defendant corporation had qualified to do business in Maryland and, in the absence of fraud,[4] would ordinarily be entitled to use its corporate name in any normal way. National Shoe, 213 Md. at page 335, 131 A.2d at page 912.

No doubt, defendants have a good reputation among their customers and in the areas where they maintain their stores. That reputation is probably known to some persons in the Washington metropolitan area, who have moved there from cities where defendants' stores are located, or have come in contact with defendants' stores in their travels. This is a factor which should be considered in weighing the equities on the extent of relief, although it does not avoid infringement of plaintiffs' trade name.

In the concluding paragraph of the National Shoe opinion Judge Henderson noted: "While courts have been slow to enjoin altogether the use of similar names, they have not been slow to minimize confusion, where a probability of confusion is shown. See Restatement, Torts, §§ 717, 731; Little Tavern Shops v. Davis, 4 Cir., 116 F.2d 903; Howards Clothes, Inc. v. Howard Clothes Corp., [236 Minn. 291], 52 N.W.2d 753." 213 Md. at page 339, 131 A.2d at page 914.

### Conclusion

The designation "Darling Dress Shop" has acquired a special significance or secondary meaning in the Washington metropolitan area as the trade name of plaintiffs' business. That trade name is entitled to protection by the courts. Under the circumstances of this case, however, plaintiffs are not entitled to prevent the defendant corporation (A) from using the word "Darling" as a trade-mark on the goods which it will offer for sale in its proposed store in Prince George's County, nor (B) from using its name on its store front, advertisements, boxes, bags, etc., provided such name is used in a manner to minimize the likelihood of confusion between plaintiffs' and defendants' stores.

To that end an injunction will issue requiring that if defendant or any parent, subsidiary or affiliated corporation uses the word "Darling" on or in connection with its proposed store in Prince George's County, such uses be limited to those hereinafter set forth:

It may use in its advertising of any and all types the trade-mark "Darling" as and where applied to the goods, provided the store is always designated as "National Darling" and/or "National Darling Shops".

3. When defendants closed their Washington store in 1939 and made no other move into the Washington area until 1958, they abandoned any rights they might have acquired from such use. Restatement, Torts, secs. 752, 753; Sherwood Co. v. Sherwood Distilling Co., 177 Md. 455, 9 A.2d 842.

4. "While fraud is not essential to infringement of either a trade-mark or a trade name, it does not follow that the defendant's fraud is immaterial. * * the existence of fraud substantially affects the scope of relief both in trade-mark and trade name cases." Restatement, Torts, sec. 717, Comment a, p. 566.

Sign "A"

NATIONAL DARLING SHOPS

Sign "B"

NATIONAL DARLING SHOPS

apparel chain

Stores from COAST to COAST

It may use the name "National Darling" and/or "National Darling Shops" on the store or its advertising signs, provided the word "National" is at least one-half as large as the word "Darling" and at least as large as the word "Shops" on each such sign, and so long as it is clear that the word "National" modifies the word "Darling" or the words "Darling Shops" and does not modify a descriptive classification of the stores.[5]

It may use the name "National Darling" and/or "National Darling Shops" in its newspaper and/or other printed advertising, provided the word "National" is at least one-half as large as the word "Darling" and at least as large as the word "Shops" on each such advertisement, and so long as it is clear that the word "National" modifies the word "Darling" or the words "Darling Shops" and does not modify a descriptive classification of the stores.

It may use the name "National Darling" and/or "National Darling Shops" in its radio, television, and/or other advertising, including classified telephone directory advertising, but not the name "Darling" without the word "National" immediately preceding and modifying it.

In the alphabetical telephone directory, defendant may be listed (a) under its present corporate name, or (b) under the listing "Darling Shops National" with any appropriate punctuation, or (c) "Darling National" with any appropriate punctuation. In the classified telephone directory, defendant may be listed under a bare listing like the alphabetical listing, but any display advertisement in the classified telephone directory must be under the word "National". No listing, alphabetical or classified, of defendant shall precede "Darling Dress Shops".

It may use the name "Darling" and/or "Darling Shops" on its boxes and bags, provided no address is used therewith. If an address is used therewith, the word "National" must precede and modify "Darling" and/or "Darling Shops".

5. For example, sign "A" on the drawing attached hereto is permitted; sign "B" is not permitted.