**PERINI CORPORATION, Plaintiff,**

v.

**PERINI CONSTRUCTION, INC., Defendant.**

**Civ. A. No. HAR 85–1821.**

United States District Court, D. Maryland.

June 26, 1989.

Maureen Ward, Steptoe & Johnson, Washington, D.C. and William A. McDaniel, Jr., Murphy & McDaniel, Baltimore, Md., for plaintiff.

Charles R. Moran, Semmes, Bowen & Semmes, Baltimore, Md., for defendant.

## MEMORANDUM OPINION

HARGROVE, District Judge.

Currently pending before this Court is plaintiff's motion for partial summary judgment on the issues of trademark and tradename infringement and unfair competition and motions by both parties for summary judgment on the issues of laches and abandonment. All issues have been fully briefed. Oral arguments were heard on March 8, 1989.

## BACKGROUND

Bonfiglio Perini began his construction company sometime between 1895 and 1900 in the state of Massachusetts. In 1918, the sole proprietorship was incorporated as B. Perini and Sons, Inc. The company provided heavy construction services (railroad, highway, culvert and bridge work) primarily in New England. In 1957, B. Perini and Sons, Inc. changed its name to the Perini Corporation ("Perini Corp."). Perini Corp. went public in 1960 and its stock has been traded on the American Stock Exchange since 1970. Currently, Perini Corp. is a full-service construction and construction management firm. Examples of plaintiff's projects include the Sir Adam Beck Tunnels under Niagara Falls; portions of the San Francisco, Boston, Miami, New York City and Washington D.C. rapid transit systems; the Bloomington Dam in West Virginia; sections of the Trans Alaska and Trans Canada pipelines; major hotels and casinos in Atlantic City and Las Vegas; the Prudential Tower in Boston; an airbase in Ovda, Israel; and the mixed use urban redevelopment project at Golden Gateway in San Francisco.

Defendant Perini Construction, Inc. ("Perini Construction") was incorporated under the laws of the State of Maryland on April 23, 1970, and has at all times been headquartered in Hagerstown, Maryland. The founder, president and chief executive officer of Perini Construction is Dominick J. Perini ("Dominick"). Examples of Perini Construction's projects include the Church of God in Maryland in 1970; the MCI and MCTC prison facilities in 1982; Winchester

Mall in Virginia in 1979; Lewis Market in Maryland in 1971; Hagerstown Junior College in Maryland in 1974; Avalon Manor in Maryland in 1972 and 1973; Martinsburg City Hospital in West Virginia in 1979; Columbia Gas of Maryland office building in Maryland in 1975; E.I. duPont de Nemours main office in West Virginia in 1980; Review and Herald office building in Maryland in 1982; Nibble with Gibble's buildings in Pennsylvania in 1971, 1972, 1975, 1976 and 1978; Ryder Truck buildings in Maryland in 1972, 1974, 1980 and 1983; and many other buildings including libraries, gymnasiums, public housing, and a performing arts center. More recently, Perini Construction built *inter alia* a physical education complex for Sheperd College in West Virginia in 1987; and a public school in Maryland in 1987.

## DISCUSSION

Plaintiff has moved for summary judgment on the issues of trademark and trade name infringement and unfair competition. Summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment." Fed.R.Civ.P. 56(c). In the case at bar, there is no genuine issue of material fact.

Plaintiff's claims lie under the Lanham Act, 15 U.S.C. § 1125(a), common law service mark and trade name infringement and common law unfair competition. The relevant state law is principally that of Maryland. The standards of Virginia, West Virginia, and Pennsylvania ("Maryland area") regarding trademark and trade name protection are also relevant, because defendant has done business in each of these states. Each of these jurisdictions, however, incorporates standards equivalent to those enunciated by the Maryland courts, *see Rosso & Mastracco, Inc. v. Giant Food Shopping Center*, 200 Va. 159, 104 S.E.2d 776 (1958); *A.W. Cox Department Store v. Cox's, Inc.*, 159 W.Va. 306, 221 S.E.2d 539 (1976); *Zimmerman v. Holiday Inns of America, Inc.*, 438 Pa.

528, 266 A.2d 87 (1970), *cert. denied*, 400 U.S. 992, 91 S.Ct. 456, 27 L.Ed.2d 440 (1971).

Even though plaintiff asserts both state and federal claims, there is no conflict of law issue because "federal and state precedent almost always leads to the same result in most cases of common law trademark infringement and unfair competition." 2 J. McCarthy, 32:13 at 700. All three causes of action, although legally distinct, are based on the same legal theory and therefore rely on the same proof: that the use of the Perini name by both companies results in a likelihood of confusion. *See Quality Inns International, Inc. v. McDonald's Corp.*, 695 F.Supp. 198, 209 (D.Md.1988); 1 J. McCarthy, *Trademarks and Unfair Competition*, 9:1 at 300–02 (2d Ed.1984). Consequently, the same legal standard applies to all of the plaintiff's claims. *See N. Hess & Sons, Inc. v. Hess Apparel, Inc.*, 216 U.S.P.Q. 721, 733 (D.Md. 1982), *aff'd.*, 738 F.2d 1412 (4th Cir.1984).

■ A trademark is "any word, name, symbol, or device or combination thereof adopted and used by a manufacturer or merchant to identify his goods and distinguish them from those manufactured or sold by others." 15 U.S.C. § 1127; *see Schering Corp. v. Schering Aktiengesellschaft*, 667 F.Supp. 175, 185–6 (D.N.J.1987). A tradename "identifies the business of the producer of goods while a trademark identifies the goods themselves." *Schering Corp.*, 667 F.Supp. at 186, citing, *Vera Perfumeria v. Cosmetica, S.A. v. Vera Licensing, Inc.*, 214 U.S.P.Q. 495, 496 (S.D. N.Y.1980).

■ It is axiomatic that a trademark is acquired through appropriation of use. *Cotton Ginny, Ltd. v. Cotton Gin, Inc.*, 691 F.Supp. 1347, 1352 (S.D.Fla.1988) (citations omitted). The trademark does not need to be registered under the Lanham Act to be protected; the appropriation and use of the trademark will establish the exclusive right to the mark. *Id.* The "rights to a [trade]mark ... accrue from prior use to the one who first uses the mark in connection with a particular line of

business." *Id.*, quoting, *Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 819 (1st Cir.1987) (citations omitted).

## SECONDARY MEANING

■ There is an initial element of proof required where, as here, the mark to be protected is a personal name. Perini is the surname of the founders of both Perini Corp. and Perini Construction. Because Perini is a surname, plaintiff must prove that the name Perini has secondary meaning; that, to the minds of the relevant public, the name Perini is associated with Perini Corp.

[Secondary meaning] contemplates that a word or phrase originally, and in that sense primarily, incapable of exclusive appropriation with reference to an article on the market, because geographically or otherwise descriptive, might nevertheless have been used so long and so exclusively by one producer with reference to his article that, in that trade and to that branch of the purchasing public, the word or phrase had come to mean that the article was his product; in other words, had come to be, to them, his trade-mark.

*Baltimore Bedding Corp. v. Moses*, 182 Md. 229, 34 A.2d 338, 343 (1943); *see also Food Fair Stores, Inc. v. Lakeland Grocery Corp.*, 301 F.2d 156, 161 (4th Cir.), *cert. denied*, 371 U.S. 817, 83 S.Ct. 31, 9 L.Ed.2d 58 (1962); *Chayt v. Darling Retail Shops Corp.*, 175 F.Supp. 462, 468 (D.Md. 1959). *National Shoe Stores Co. v. National Shoes of New York, Inc.*, 213 Md. 328, 131 A.2d 909, 913 (1957); To determine secondary meaning, the courts in this jurisdiction and others have examined:

1. length of time in business;

2. the senior or first user's advertising expenditures;

3. consumer studies linking the name to the source;

4. sales success;

5. unsolicited media coverage of the product;

6. attempts to plagarize the mark; and

7. length and exclusivity of the mark's use.

*See 815 Tonawanda Street Corp. v. Fay's Drug Co., Inc.*, 842 F.2d 643, 648 (2d Cir. 1988), citing, *Thompson Medical Co., Inc. v. Pfizer, Inc.*, 753 F.2d 208, 217 (2d Cir. 1985) (collecting cases); *Yarmuth–Dion, Inc. v. D'ion Furs, Inc.*, 835 F.2d 990, 993 (2d Cir.1987) (citation omitted); *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1528–9 n. 3 (4th Cir.1984); *Kyhos v. Perpetual Savings & Loan Assoc.*, 480 F.2d 204, 205–9 (4th Cir.1973); *Communications Satellite Corp. v. Comcet, Inc.*, 429 F.2d 1245, 1248 (4th Cir.) *cert. denied*, 400 U.S. 942, 91 S.Ct. 240, 27 L.Ed.2d 245 (1970); *Little Tavern Shops, Inc. v. Davis*, 116 F.2d 903, 906 (4th Cir.1941); *Chayt*, 175 F.Supp. at 469; *Fox Fur Co. v. Fox Fur Co.*, 59 F.Supp. 12, 14 (D.Md.1944); *Baltimore Bedding Corp.*, 34 A.2d at 342; *N. Hess & Sons, Inc.*, 216 U.S.P.Q. at 733.

■ Applying these principles to the case at bar, there can be little doubt that Perini Corp. has established secondary meaning in the name Perini. Perini Corp. has used the name Perini in its corporate name since 1918 and it has been known as Perini Corp. since 1957. Perini Corp. has been doing business nationally and internationally since the 1950s. The Massachusetts company entered the Maryland area at least by World War II when it constructed significant projects in Maryland and Pennsylvania for the U.S. Army Corps of Engineers.

Perini Corp. has continued to maintain a presence in Maryland. It has consistently bid for work in the Maryland area. It has spent over $12.8 million on advertising and corporate relations throughout the United States, including the Maryland area, since 1960. Perini Corp. has received unsolicited media coverage by virtue of its being a public company since 1961, and traded on the American Stock Exchange since 1970. The company has also received unsolicited media coverage because it is one of the leading construction firms in this country, and because it has been a builder of both record-setting and award-winning projects.

Perini Corp.'s sales success is equally impressive. Since the 1950s, Perini Corp. has consistently ranked among the industry's leaders on lists measuring the respective volume of new contracts awarded. It has been listed in the *Engineering News Record*'s "Billion Dollar Club" since 1986. Since 1980, consolidated revenues in the disputed states have also been substantial: $22,506,286 in Maryland; $26,695,311 in Pennsylvania; $34,978,270 in Virginia; $29,977,273 in West Virginia; and $21,837,806 in the District of Columbia. Based on this evidence, this Court finds that Perini Corp. has established secondary meaning in the Maryland area.

## LIKELIHOOD OF CONFUSION

Having established secondary meaning, Perini Corp. must also prove that there is a likelihood of confusion between Perini Corp. and Perini Construction. To do so, Perini Corp. must show "that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question." *Yarmuth–Dion, Inc.*, 835 F.2d at 993, (quoting, *Mushroom Makers, Inc. v. R.G. Barry Corp.*, 580 F.2d 44, 47 (2d Cir.1978) (per curiam), *cert. denied*, 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979)).

As they have done with secondary meaning, the courts have developed various factors to be used when determining likelihood of confusion. These include:

1. the strength of [the plaintiff's] mark;
2. the degree of similarity between the two marks;
3. the proximity of the products;
4. the likelihood that the prior owner will bridge the gap;
5. actual confusion;
6. the reciprocal of defendant's good faith in adopting its own mark;
7. the quality of defendant's product; and
8. the sophistication of the buyers.

*Yarmuth–Dion, Inc.*, 835 F.2d at 993, quoting, *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 492 (2d Cir.) *cert. denied*, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961); *see also, Communications Satellite Corp.*, 429 F.2d at 1251 (citations omitted); *Frank's Hardware, Inc. v. Frank's Nursery & Crafts, Inc.*, Civ. No. JH 79–44 (D.Md. June 25, 1981).

■ In this case, the extent of the likelihood of confusion between the two companies is evident. Both companies call themselves "Perini." Both companies are in the construction business. Both companies advertise under the name "Perini." Both companies use the same marketing channels to solicit construction projects. Both companies bid for work in the Maryland area. In fact, companies have, on occasion, solicited for the same job.

In addition, there is evidence that actual confusion has taken place. Such incidences include, *inter alia*, receiving the other's invoices, misdirection of correspondence about bids, one company being blamed for the other's labor problems, the naming of the wrong company on legal pleadings, and confusion that the two companies are actually branch offices of the other. In light of the similarity of the two companies and the actual confusion that has taken place to date, this Court finds that there is a likelihood of confusion between Perini Corp. and Perini Construction.

## LACHES

■ Perini Construction argues that plaintiff's claims are barred under the doctrine of laches. Laches is a defense to claims of trademark infringement and unfair competition. *Skippy, Inc. v. CPC Intern, Inc.*, 674 F.2d 209 (4th Cir.1982), *citing, Greyhound Corp. v. Rothman*, 84 F.Supp. 233 (D.Md.1949), *aff'd.*, 175 F.2d 893 (4th Cir.1949). There are three elements involved in a laches defense: plaintiff's knowledge of defendant's use of the mark; plaintiff's inexcusable delay in taking action; and the prejudice that will accrue to defendant if plaintiff is allowed to assert its right at this time. *Citibank, N.A. v. Citytrust*, 644 F.Supp. 1011, 12–13 (E.D.N.Y.1986), *citing, Cuban Cigar Brands, N.V. v. Upmann International,*

*Inc.*, 457 F.Supp. 1090, 1096 (S.D.N.Y. 1978), *aff'd.*, 607 F.2d 995 (2d Cir.1979).

## 1. KNOWLEDGE

The time period for measuring delay begins when plaintiff either knew or should have known about the defendant's alleged infringement. *Armco, Inc. v. Armco Burglar Alarm Co.*, 693 F.2d 1155, 1162 (5th Cir.1982). Although there are suggestions that lower level employees may have learned of Perini Construction prior to 1981, Charles J. Patterson ("Patterson"), Perini Corp.'s Vice President for Corporate Relations, testified at his deposition that he first learned of Perini Construction in 1981, when a clipping service utilized by Perini Corp. erroneously sent him a copy of an article which mentioned Perini Construction. Patterson further testified that he sent his first memo to David B. Perini, ("David"), President of Perini Corp. regarding Perini Construction in 1981. About this same time, Perini Corp. began to receive invoices meant for Perini Construction. In response, Patterson decided to monitor Perini Construction. On August 19, 1983, Patterson wrote to David stating:

> As you know, for a number of years we have followed the progress of Perini Construction, Inc. of Hagerstown, Maryland through our clipping service, and anything they see around the country that says "Perini" they send along to us. Since this has cost us only 2 or 3 dollars extra each year, I have never objected because it does give us an opportunity to keep an eye on the activities of this company.

Patterson testified that, "[a]s the clipping service sent more and more articles about Perini Construction, discussing larger projects and its plans to go nationwide, ... I became more and more concerned...." Patterson Aff. at 14.

## 2. DELAY

In response to Patterson's "growing concern", Charles B. Molineaux, Jr. ("Molineaux"), Perini Corp.'s General Counsel, wrote to Dominick J. Perini, ("Dominick"), the head of Perini Construction explaining Perini Corp.'s business and background, demanding "that your corporate infringement on our corporate name cease." Letter from Charles B. Molineaux, Jr. to Dominick J. Perini, October 14, 1983. The two companies apparently tried to settle their differences throughout 1983 and 1984 through conversations and letters, *see* letter from Calvin Cobb to Charles R. Moran, September 6, 1984; letter from Calvin Cobb to Charles B. Molineaux, Jr., October 9, 1984; letter from Calvin Cobb to Charles R. Moran, October 9, 1984. When negotiations broke down, Perini Corp. filed this suit on April 29, 1985. Thus, Perini Corp. delayed approximately two years before notifying Perini Construction (1981–1983) of the infringement.

In the circumstances of this case, this Court finds that the two-year delay before taking action was not inexcusable. *See Tisch Hotels, Inc. v. Americana Inn, Inc.*, 350 F.2d 609, 614–15 (7th Cir.1965) (18 month delay held reasonable); *Rothman v. Greyhound Corp.*, 175 F.2d 893 (4th Cir. 1949) (4 year delay held reasonable); *Koontz v. Jaffarian*, 617 F.Supp. 1108, 1115–1116 (D.C.Va.1985) (3 year delay held reasonable); *Finance Co. of America v. Bankamerica Corp.*, 502 F.Supp. 593, 595–7 (D.Md.1980) (5 year delay held reasonable); *John Walker & Sons, Inc. v. Bethea*, 305 F.Supp. 1302, 1307 (D.S.C. 1969) (2 year delay held reasonable); *compare Skippy, Inc. v. CPC Intern, Inc.*, 674 F.2d 209 (4th Cir.) *cert. denied*, 459 U.S. 969, 103 S.Ct. 298, 74 L.Ed.2d 280 (1982) (approximately 30 year delay entitled defendant to laches defense).

## 3. PREJUDICE

Defendant claims that the issuance of an injunction would be prejudicial to Perini Construction for two reasons. First, Perini Construction claims that it has "built up a large reservoir of goodwill and an excellent reputation.... [as] a well-known contractor known for its high-quality, low-cost construction." Perini Construction, Inc.'s Memorandum of Law in Opposition to Perini Corporation's Motion for Partial Summary Judgment at 52. Additionally, defendant argues that "Perini Construction has expended considerable sums of money pro-

moting and establishing its name and reputation and has established a reputation as a high-quality, low-cost contractor." *Id.* Perini Construction argues that, if it is "estopped from using its name, much of the goodwill would be lost and considerable financial losses would result." *Id.*

As the Seventh Circuit Court of Appeals stated in *Tisch:*

> Mere delay is not sufficient to warrant barring plaintiffs' suit. In *Standard Oil of Colorado v. Standard Oil Co.* 72 F.2d 524, 527 (10th Cir.1934) the court stated that "mere delay is insufficient; it must result in prejudice to the party asserting laches." If this prejudice could consist merely of expenditures in promoting the infringed name, then relief would have to be denied in practically every case of delay. It is only, however, where the delay is so prolonged and inexcusable that it amounts to a virtual abandonment of the right by the plaintiff for a long period of time that the balance of equities would favor the knowing infringer. It may be that in this case defendants thought they had the legal right to adopt and use plaintiffs' name. Even so, they acted at their peril in doing so, and further acted at their peril in continuing to use the name in the face of a demand to cease.

*Tisch Hotels, Inc.,* 350 F.2d at 615 (citations omitted).

Dominick's own testimony reveals that he knew in 1970 when he was naming Perini Construction that there already existed a high visibility, mobile construction company named Perini.

Dominick first learned of Perini Corp. as early as the 1960's, when B. Perini & Sons changed its name to Perini Corp.[1] Dominick also testified that he followed both B. Perini & Sons and Perini Corp. in the construction trade journals during the 1960's. He testified that he knew the company as the builder of large projects and as the owner of the Boston Braves. Dominick recalled knowing that a "wonderful gentleman" named Louis Perini ran Perini Corp.

in the 1960's and that Louis Perini was held in the highest esteem in the construction industry as being a "true construction man." Dominick J. Perini deposition at 30. Moreover, Dominick's uncle Louis Perini, who lives in Milan, Italy, once contacted Perini Corp.'s former president to inquire whether the two families were related. According to his testimony, Dominick was aware that Perini Corp. accepted construction jobs outside of the Boston area.

Thus, even though Perini Construction might be disadvantaged by an injunction, because it was aware of the existence of Perini Corp. at the time it chose its name, any resulting harm is not sufficient to make out a defense of Laches in this case. *See Tisch,* supra.

## ABANDONMENT

■ Perini Construction has also argued that Perini Corp. abandoned the Perini name in the Maryland area. Under the Lanham Act,

> [A] mark shall be deemed to be "abandoned"—
>
> (a) When its use has been discontinued with intent not to resume. Intent not to resume may be inferred from circumstances. Nonuse for two consecutive years shall be *prima facie* abandonment.
>
> (b) When any course of conduct of the registrant, including acts of omission as well as commission, causes the mark to lose its significance as an indication of origin. Purchaser motivation shall not be a test for determining abandonment under this subparagraph.

Lanham Act § 45, 15 U.S.C. § 1127 (1989). In this case, there has been specific evidence of continued use of the Perini name by Perini Corp. in the Maryland area. Perini Corp. continued to bid for work in the Maryland area even if it was unsuccessful in winning contracts in the area for a number of years. Additionally, its national advertisements are seen in the Maryland area. Thus, defendant's motion for summary judgment on the issue of abandon-

---

1. Dominick states that he knew of Perini Corp. in the 60's when it was B. Perini & Sons. It should be noted that Perini Corp. changed its name in 1957.

ment must fail, because Perini Corp. did not affirmatively abandon the Maryland area.

## CONCLUSION

Based on the foregoing, this Court will grant plaintiff's motion for partial summary judgment on the issues of trademark and tradename infringement and unfair competition for the reasons stated above. Plaintiff's motion for summary judgment on the issues of laches and abandonment will be granted. Defendant's motion for summary judgment on the issues of laches and abandonment will be denied. It will be so ordered.

## ORDER

In accordance with the foregoing Memorandum Opinion, IT IS this 26th day of June, 1989, by the United States District Court for the District of Maryland ORDERED:

1. That plaintiff's Motion for Partial Summary Judgment on the issues of trademark and tradename infringement and unfair competition BE, and the same hereby IS, GRANTED.

2. That plaintiff's Motion for Partial Summary Judgment on the issues of laches and abandonment BE, and the same hereby IS, GRANTED.

3. That defendant's Motion for Summary Judgment on the issues of laches and abandonment BE, and the same hereby IS, DENIED.

4. That the Clerk of the Court close this case.

5. That the Clerk of the Court mail copies of this Order and the accompanying Memorandum Opinion to all counsel of record.